REY HASSAN, SBN 50717
MARK P. MEUSER, SBN 231335
HASSAN LAW FIRM
1801 Bush Street, #304
San Francisco, CA 94109
Telephone: (415) 775-9700
Fax: ( 415) 775-2507
E-Mail: reyhassan@yahoo.com

Attorney for Nathalie Al-Thani, Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHALIE AL-THANI,<br><br>              Plaintiff,<br><br>      Vs.<br><br><br>WELLS FARGO & COMPANY,  WELLS FARGO INVESTMENTS, LLC, SHALOM MORGAN, DAN HILKEN, ANDREY MOVSESYAN, and DOES 1 to 100 inclusive<br><br>              Defendants. | Case No.: CV 08-1745 CW<br><br><br>PLAINTIFF'S FIRST AMENDED COMPLAINT<br><br><br>DEMAND FOR JURY TRIAL |

I. INTRODUCTION

1.      This case arises out of misrepresentation by Defendants Wells Fargo & Company Wells Fargo Investments, LLC, Shalom Morgan, Dan Hilken, and Andrey Movsesyan, which induced the Plaintiff Nathalie Al-Thani to purchase $1,750,000.00 of auction rate securities. Defendants were able to persuade Al-Thani to purchase a security by not calling it a security but calling it similar to a "money market" fund that is as safe as a certificate of deposit. The investment adviser sold the funds to Plaintiffs as debt instruments carrying rates that reset every week. These funds were represented to be

Al-Thani v. Wells Fargo & Company et. al.
First Amended Complaint

without risk which could be redeemed within a week. In fact, when Plaintiff Nathalie Al-Thani requested the funds be redeemed, she was informed that no market existed for these securities and they could not be redeemed. Such material misrepresentations violated both federal securities law and state statutory and common law as detailed herein.

## II. JURISDICTION VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa, Section 22 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77v; 28 U.S.C. § 1331, and 28 U.S.C. § 1332.

## III. PARTIES

3.      Plaintiff Nathalie Al-Thani is a citizen of the country of France and is currently residing in San Francisco, California, within the jurisdiction of the U.S. District Court for the Northern District of California.

4.      Defendant Wells Fargo & Company is the parent of Wells Fargo Investments, LLC. It is incorporated in Delaware and does business as a diversified financial services corporation headquartered at 420 Montgomery Street, San Francisco, California 94104. Defendant Wells Fargo & Company may be served by serving Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 2730 Gateway Oaks Dr., Suite 100, Sacramento, CA 95833.

5.      Defendant Wells Fargo Investments, LLC is a broker/dealer in securities which is a wholly owned subsidiary of Wells Fargo & Company. Its primary place of business is 420 Montgomery Street, San Francisco, California 94104. It does business in

Al-Thani v. Wells Fargo & Company et. al.
First Amended Complaint

the jurisdiction of the United States District Court for the Northern District of California.

Defendant Wells Fargo Investments, LLC may be served by serving CSC – Lawyers

Incorporating Service, 2730 Gateway Oaks Dr., Suite 100, Sacramento, CA 95833.

      6.     Defendant Shalom Morgan is a Financial Consultant for Wells Fargo

Investments, LLC. He works at the location 1900 Union Street, San Francisco, CA

94123. Defendant Morgan is the individual who mislead Plaintiff Al-Thani into

purchasing Auction Rate Securities.

      7.     Defendant Dan Hilken is a Senior Vice President of Wells Fargo

Investments, LLC. Hilken is the supervisor of Defendant Morgan. Hilken's office is

located at 770 Tamalpais Drive, Suite 220, Corte Madera, CA 94925.

      8.     Defendant Andrey Movsesyan is a Financial Consultant for Wells Fargo

Investments, LLC. He works at the location 1900 Union Street, San Francisco, CA

94123. Movsesyan's name appears on the "Transaction Confirmation" along with

defendant Morgan as a financial consultant for Al-Thani.

      9.     Plaintiff is ignorant of the true names and capacities of defendants sued

herein as Does 1 though 100, inclusive, and therefore sues these defendants by such

fictitious names. Plaintiff will amend this Complaint to allege their true names and

capacities when ascertained. Plaintiff is informed and believes, and therefore alleges, that

each of the fictitiously named defendants is responsible in some manner for the

occurrence herein alleged and are agents of each other and or one another, and plaintiff's

injuries were proximately caused by the negligence and or acts of the defendants, and

each of them.

## IV. FACTS

10.     Plaintiff Nathalie Al-Thani (hereinafter Al-Thani) is a customer of both Defendant Wells Fargo & Company and Wells Fargo Investments, LLC and does business through its employee, agent, and representative, investment adviser or financial consultants Shalom Morgan and Andrey Movsesyan.

11.     On or about January 17, 2008, Al-Thani entered into Wells Fargo Bank located on 1900 Union Street, San Francisco, CA 94123. Approximately a week earlier, Al-Thani had $1,750,000.00 wired to her account with Wells Fargo Bank.

12.     Al-Thani told the bank teller that she was interested in purchasing a certificate of deposit with the money. The teller told Al-Thani that a certificate of deposit was going to lock up the money for five months. Al-Thani told the teller that she needed her money liquid and thus a certificate of deposit for five months would not be suitable for her needs. The teller then introduced Al-Thani to Shalom Morgan.

13.     Al-Thani told Morgan that she had just recently sold her house in Germany and that she needed this money in the next few weeks to purchase a house.

14.     Morgan offered to break down the money and invest it for her so that she could gain 6 percent intent. Al-Thani told Morgan that she was not looking to invest the money but that she needed the money to be extremely liquid so that she could purchase a house.

15.     Morgan then told Al-Thani about Auction Rate Securities. He said that they were as safe as a Money Market or Certificate of Deposits, that the money in these accounts were making close to 5 percent interest. Morgan claimed that the funds were AAA and that they were perfectly safe and because they were auctioned every week, all

Al-Thani v. Wells Fargo & Company et. al.
First Amended Complaint

1
2
3

Al-Thani had to do was notify him on Wednesday and she could have her money back on Friday. Al-Thani constantly asked Morgan about the risks and Morgan kept telling her that it was perfectly safe way to hold the money.

4
5
6
7

16.     Morgan also told Al-Thani that Auction Rate Securities have nothing to do with the stock market and thus she should not even watch the stock market on television as it is not related.

8
9
10
11
12

17.     On or about January 17, 2008, Al-Thani was persuaded to purchase approximately $1,750,000.00 in auction rate securities. The money was used to purchase 70 shares in the Neuberger Berman Realty. The financial consultants were Defendant Morgan and Movsesyan.

13
14
15
16
17

18.     Morgan told Al-Thani that the principle amount of the investment was at no risk that it was a AAA fund and that Morgan only dealt with safe investments. Morgan told Al-Thani that Wells Fargo was the only bank that could offer her these auction rate accounts.

18
19
20
21

19.     On or about February 6, 2008, Al-Thani informed Morgan that she needed the funds liquidated so that she could purchase a house in San Francisco. On or about February 8, 2008, Al-Thani was informed by Morgan that he missed the deadline and thus Al-Thani did not have her money when she needed it.

22
23
24
25

20.     On or before February 13, 2008, Al-Thani informed Morgan a second time that she needed the funds liquidated. On or about February 15, 2008, Al-Thani was informed by Morgan that the bank did not auction in time.

26
27
28

5

21.     On or before February 20, 2008, Al-Thani informed Morgan a third time that she needed the funds liquidated. On or about February 22, 2008, Al-Thani was informed by Morgan that he could not liquidate the fund.

22.     On or before February 27, 2008, Al-Thani informed Morgan a fourth time that she needed the funds liquidated. On or about February 29, 2008, Al-Thani was informed by Morgan that there was a problem with the money market and that the funds cannot be liquidated.

23.     Because Al-Thani is a French citizen and does not have great knowledge of the United States banking operations, she went with a friend on March 3, 2008 to speak with Morgan about liquidating the fund. Al-Thani was told that there was a problem with the auction that had never occurred before. Al-Thani was told by Morgan that this was a problem that had never occurred before despite the fact that auction rate securities had failed in the past.

24.     Morgan told Al-Thani that this was actually a good thing that the auction had failed because this means that the bank had to pay her a higher rate of interest. Al-Thani told Morgan that she was not concerned about interest, she just wanted her money so that she could purchase a house. Furthermore, the interest rate that Al-Thani has been receiving is actually less now then she was receiving at the beginning.

25.     On or about March 7, 2008, Al-Thani was informed by Morgan that the auction did not occur and thus the funds could not be liquidated.

26.     Al-Thani then went to visit defendant Morgan's supervisor, defendant Dan Hilken.

Al-Thani v. Wells Fargo & Company et. al.
First Amended Complaint

27.     Based upon the recommendation of Defendant Dan Hilken, Al-Thani sent

her friend who had a better understanding of the banking process to speak with Chuck

Gaggs a senior officer with Wells Fargo. Church Gaggs told Al-Thani's friend that Wells

Fargo would give Al-Thani a line of credit using the money in the auction rate security as

collateral.

28.     A line of credit was not acceptable to Al-Thani since the money was

supposed to be put in a completely safe account that could be withdrawn at anytime so

that Al-Thani could purchase a house. Al-Thani did not need a loan to purchase the house

because the money was supposed to be in her bank account for a cash purchase.

29.     Beginning in the summer of 2007, some auctions for auction rate

securities backed by sub-prime debt began to fail. In the fall-winter of 2007, more

auctions began to fail. However Wells Fargo who knew or should have known of the

volatility and risks of auction rate securities continued to encourage investors like Al-

Thani to purchase auction rate securities and continued to represent to investors that these

securities were the same as cash or money markets and were highly liquid, safe

investments for short-term investing, without any disclosure of the risks associated with

the securities including the risk of losing the investment itself.

30.     On Thursday, February 7, 2008, auctions for these securities began to fail

en masse, due to auction-running banks' refusal to step in to bid on the excess supply. On

February 13, 2008, 80% of auctions failed due to concerns of investors about the credit

ratings of the insurers, by proxy, made everything else they had insured looked

vulnerable including municipal bonds. On February 20, 2008, 62% failed (395 out of 641

auctions).

Al-Thani v. Wells Fargo & Company et. al.
First Amended Complaint

# V. CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### FEDERAL SECURITIES ACT VIOLATIONS – Rule 10b-5

31.    Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 30 of the Complaint.

32.    The fraudulent misrepresentations and omissions to state material facts by Defendants' agents, employees or representatives violates Rule 10b-5 of the "Exchange Act" which provides as follows:

"§240.10b-5 Employment of manipulative and deceptive devices.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a)    To employ any device, scheme, or artifice to defraud,

(b)    To make any untrue statement of a material fact or to omit to state material fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading, or

(c)    To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

33.    The Defendants utilizing interstate commerce violated rule 10b-5 in the following respects:

a.    Representing that the investment was a money market when in fact the investment was not a money market.

b.    Representing that the funds were without any significant risk;

c.    Representing that the funds could be liquidated without condition upon proper notification;

Al-Thani v. Wells Fargo & Company et. al.
First Amended Complaint

d.    Representing that the funds were the same as certificate of deposits but carried higher interest rates on a short term basis.

34.    These misstatements of material fact were relied upon by Al-Thani to her detriment.

35.    Defendants, through their agents, employees or representatives also omitted to state material facts which were relied upon by Al-Thani to her detriment. Specifically, Defendants failed to disclose that there must be a buyer for these funds to be sold, that the funds did in fact have significant risk and that the funds were unable to be liquidated on proper notice if there was not a market or buyer for the fund at that time. Such omissions to state material fact were relied upon by Al-Thani to her financial detriment.

36.    These acts and practices and course of business operate as a fraud and deceit upon the Plaintiff and other customers similarly situated.

37.    The Defendants acted intentionally and with reckless disregard in disseminating this misleading information and in failing to disclose material facts to the Plaintiff and other customers similarly situated.

SECOND CAUSE OF ACTION
FEDERAL SECURITIES ACT VIOLATIONS - VIOLATION OF SECTION 15 OF
THE SECURITIES ACT OF 1933

38.    Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 37 of the Complaint.

39.    This claim is brought pursuant to Section 15 of the Securities Act against the control person Defendant Wells Fargo & Company as control persons of the broker/dealer Defendant Wells Fargo Investments, LLC and its employees defendant Morgan, Hilkin, and Movsesyan. It is appropriate to treat these Defendants as a group for

9

pleading purposes and to presume that the misleading information complained about herein is the collective action of the control person Defendant.

40.     The broker/dealer Defendant is liable under section 12(a)(2) of the Securities Act as set forth herein.

41.     The control person Defendant was a "control person" of the broker/dealer Defendant within the meaning of Section 15 of the Security Act, by virtue of its position of operational control and/or ownership. At the time Plaintiff purchased the fund from the broker/dealer Defendant by virtue of its position of control and authority over the broker/dealer, the control person Defendant directly and indirectly, had the power and authority, and exercised the same, to cause the broker/dealer to engage in the wrongful conduct complained of herein.

42.     Pursuant to Section 15 of the Securities Act, by reason of the foregoing, the control person Defendant is liable to Plaintiff to the same extent as the broker/dealer Defendant is for their primary violations of Section 12(a)(2) of the Securities Act.

43.     By virtue of the foregoing, Plaintiff is entitled to damages against the control person Defendant.

THIRD CAUSE OF ACTION<br/>FEDERAL SECURITIES ACT VIOLATIONS - PLAINTIFF'S CLAIMS AGAINST THE CONTROL PERSON DEFENDANT FOR VIOLATIONS OF SECTION 20(a)

44.     Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 43 of the Complaint.

45.     This claim is brought pursuant to Section 20(a) of the Exchange Act against the control person Defendant.

46.     The control person Defendant acted as a controlling person of the investment adviser within the meaning of Section 20(a) of the Exchange Act for the

reasons alleged herein. By virtue of their operational and management control of the investment adviser respective businesses and systematic involvement in the fraudulent scheme alleged herein, the control person defendant had the power to influence and control and did influence and control, directly or indirectly, the decision making and actions of the investment adviser, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The control person Defendant had the ability to prevent the issuance of the statements alleged to be false and misleading or could have caused such statements to be corrected.

47.    In particular, the control person Defendant had direct and supervisory involvement in the operations of the investment adviser and, therefore, is presumed to have had the power to control or influence the particular transaction giving rise to the securities violations as alleged herein, and to have exercised same.

48.    As set forth above, the investment adviser violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of its positions as a controlling person, the control person Defendant is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the investment adviser's wrongful conduct, Plaintiff and other similarly situated customers suffered damages in connection with their purchase of these funds as set out herein.

FOURTH CAUSE OF ACTION
COMMON LAW FRAUD

49.    Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 48 of the Complaint.

Al-Thani v. Wells Fargo & Company et. al.
First Amended Complaint

50.    The fraudulent misrepresentations and omissions to state material facts also constituted common law fraud, which was relied upon by Plaintiff to her great financial detriment.

## FIFTH CAUSE OF ACTION
## VIOLATION OF CALIFORNIA CIVIL CODE §1709 - INTENTIONAL MISREPRESENTATION

51.    Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 50 of the Complaint.

52.    Defendant violated Civil Code §1709 when they willfully deceived Al-Thani by making false representations of past or existing material fact in the following respects:

a.   Representing that the investment was a money market;

b.   Representing that the funds were without any significant risk;

c.   Representing that the funds could be liquidated without condition upon proper notice;

d.   Representing the funds were as safe as certificate of deposits but carried higher interest rates on a short term basis.

53.    Defendants had knowledge that the auction rate securities were not as safe as certificate of deposits in the following respects:

a.   Auction rate securities are not cash alternatives, like money market funds, and instead, are complex, long-term financial instruments with 30 year maturity dates, or longer;

b.   Auction rate securities are only liquid at the time of sale because Wells Fargo and other broker-dealers in the auction market were artificially

Al-Thani v. Wells Fargo & Company et. al.
First Amended Complaint

supporting and manipulating the market to maintain the appearance of

liquidity and stability;

c.    Auction rate securities are only able to be converted into cash

depended entirely on the perpetuations of the artificial auction market

being maintained by Wells Fargo and other broker-dealers.

54.    Defendants made these willful misrepresentations to Al-Thani to induce

her to place her money in auction rate securities and thus put her money in a more risky

investment.

55.    Since Defendant has been unable to liquidate Plaintiff's money, Plaintiff

has suffered a financial detriment.

SIXTH CAUSE OF ACTION
NEGLIGENT MISREPRESENTATION

56.    Al-Thani repeats and makes a part hereof each and every allegations set

forth in paragraphs 1 through 54 of the Complaint.

57.    Pleading in the alternative, Plaintiff also alleges that the acts and

omissions of Defendants through its employees, agents or representatives were negligent.

Defendants knew or should have known that these funds were not the same as certificate

of deposits. Defendants knew or should have known that the funds potentially carried a

high degree of risk and that the fund could only be liquidated if a buyer existed.

58.    By Morgan's own admissions as detailed herein, he did not know the risks

of the financial products he was selling to the Plaintiff and other unsuspecting customers.

Such failure to investigate the true nature of the investment products which he sold was

negligent and that negligence was a proximate cause of damage to the Plaintiff herein.

Al-Thani v. Wells Fargo & Company et. al.
First Amended Complaint

59.    Moreover, Defendants through their employees, agents or representatives negligently misrepresented the risk and liquidity of the funds and such negligent misrepresentations were a proximate cause of damage to the Plaintiff. Simply put, if the Defendant had disclosed the true nature of the funds, their risk and potential lack of liquidity, Al-Thani would have never put the money to purchase a house into these funds.

SEVENTH CAUSE OF ACTION
VIOLATIONS OF CALIFORNIA CIVIL CODE § 1572 – ACTUAL FRAUD

60.    Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 59 of the Complaint.

61.    Defendants violated § 1572 of the Civil Code because they made false representations of a past or existing material fact in the following respects:

a.    Representing that the investment was a money market;

b.    Representing that the funds were without any significant risk;

c.    Representing that the funds could be liquidated without condition upon proper notice;

d.    Representing the funds were as safe as certificate of deposits but carried higher interest rates on a short term basis.

62.    Defendants had knowledge that the Auction Rate Securities were not as safe as certificate of deposits in the following respects:

a.    Auction rate securities are not cash alternatives, like money market funds, and instead, are complex, long-term financial instruments with 30 year maturity dates, or longer;

b.    Auction rate securities are only liquid at the time of sale because Wells Fargo and other broker-dealers in the auction market were artificially

Al-Thani v. Wells Fargo & Company et. al.
First Amended Complaint

supporting and manipulating the market to maintain the appearance of

liquidity and stability;

c. Auction rate securities are only able to be converted into cash

depended entirely on the perpetuations of the artificial auction market

being maintained by Wells Fargo and other broker-dealers.

63.    Defendant intended that Al-Thani rely upon their representation that the

auction rate securities were a safe investment.

64.    Plaintiff was a French citizen who had recently moved to the United States

and she went to her bank teller and asked to put the money in the safest investment

possible because she needed to use the money to purchase a house in the next couple of

weeks. The Wells Fargo bank teller sent her over to Defendant Morgan who informed Al-

Thani that auction rate securities were a money market and that she would obtain a better

interest rate on her money and have the same liquidity. Plaintiff was justified in relying

upon the representations of Defendant Morgan.

65.    Plaintiff Al-Thani has not been able to withdraw her funds and thus has

been damaged by the fact that she has lost $1,750,000.00.

## EIGHTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

66.    Al-Thani repeats and makes a part hereof each and every allegations set

forth in paragraphs 1 through 65 of the Complaint.

67.    As a stockbroker who trades in speculative securities, defendants owed a

fiduciary duty to Plaintiff Al-Thani to do the following:

a. To make sure that Al-Thani understood the investment risks in light of

her financial situation

b.  To inform Al-Thani that speculative investments are not suitable if

defendant believes that the client is unable to bear the financial risks

involved; and

c.  Not to solicit client's purchase of speculative securities that the

stockbroker considers to be beyond the client's risk threshold.

68.    Defendant knew that Al-Thani did not want a risky investment because of

her need to have quick access to her money so that she could purchase a house.

69.    As a result of Defendants not doing a proper risk assessment of Plaintiff

Al-Thani and by failing to properly warn Al-Thani of the risks of the investment, such

breach of fiduciary duties were a proximate and producing cause of damages to Al-Thani.

NINTH CAUSE OF ACTION
PROFESSIONAL MALPRACTICE

70.    Al-Thani repeats and makes a part hereof each and every allegations set

forth in paragraphs 1 through 69 of the Complaint.

71.    Defendant Shalom Morgan is currently registered with the following self-

regulatory organizations and states:

a.  Financial Industry Regulatory Authority, registered as of January 22,

2004;

b.  NASDAQ Stock Market, registered as of July 12, 2006;

c.  State of California, registered as of October 28, 2004;

d.  State of Oregon, registered as of February 2, 2007;

e.  State of Texas, registered as of February 2, 2007;

f.  State of Washington, registered as of February 2, 2007;

g.  State of New York, registered as of March 20, 2007;

Al-Thani v. Wells Fargo & Company et. al.
First Amended Complaint

h.  State of Florida, registered as of July 17, 2007;

i.  State of Pennsylvania, registered as of September 19, 2007;

j.  State of Virginia, registered as of February 19, 2008.

72.  Defendant Andrey Movesesyan is currently registered with the following self-regulatory organizations and states:

a.  Financial Industry Regulatory Authority, registered as of November 3, 2006;

b.  NASDAQ Stock Market, registered as of November 3, 2006;

c.  State of California, registered as of November 20, 2006.

73.  Defendant Dan Hilken is a Senior Vice President and Associate Regional Manager with Wells Fargo Investment and was involved in this present litigation after Defendant Morgan was unable to liquidate Al-Thani's accounts.

74.  All three individually named defendants are individuals who are professionals in the financial investment world.

75.  Defendant Morgan failed to use the skill and care that a reasonably careful financial consultant would have used in similar circumstances. A reasonably careful financial consultant would have had Al-Thani fill out a form to properly ascertain her risk level. Upon discovering Al-Thani's low risk tolerance, a reasonably careful financial consultant would not have recommended a shaky investment like an auction rate security.

76.  Defendants were negligent in making representations of a past or existing material fact in the following respects:

a.  Representing that the investment was a money market;

b.  Representing that the funds were without any significant risk;

Al-Thani v. Wells Fargo & Company et. al.
First Amended Complaint

c. Representing that the funds could be liquidated without condition upon proper notice;

d. Representing the funds were as safe as certificate of deposits but carried higher interest rates on a short term basis.

77. Plaintiff is unaware of Defendant Movsesyan's involvement in the transaction but does know that Defendant Movsesyan's name appeared upon the transaction confirmation as a financial consultant.

78. Defendant Hilken as a Senior Vice President is a supervisor of Morgan and Movsesyan and as such, owed a duty to hire, train, and supervise the financial consultants so that they do not fall beneath the standard of care owed to clients of Wells Fargo Bank and Wells Fargo Investment.

TENTH CAUSE OF ACTION
BREACH OF CONTRACT

79. Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 78 of the Complaint.

80. Al-Thani claims that she and Defendant Wells Fargo Investment, LLC and Defendants Morgan and Movsesyan entered into a contract whereby Defendants Morgan and Movsesyan were to put her $1,750,000.00 into a money market that was as safe as a certificate of deposit whereby she might have easy access to her money while obtaining a higher interest rate for her money.

81. Al-Thani claims that Defendants Wells Fargo Investment, LLC and Morgan and Movsesyan breached this contract when they did not return her money to her on Friday February 8, 2008 or any subsequent Fridays after she had made a timely request for her money to be liquidated.

82.    Al-Thani also claims that Defendants Wells Fargo Investments, LLC, Morgan, and Movsesyan's breach of this contract caused harm to Al-Thani for which defendants and all of them should pay.

ELEVENTH CAUSE OF ACTION
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

83.    Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 82 of the Complaint.

84.    When Defendant Morgan pushed Al-Thani into investing into auction rate securities knowing that she needed the money on short notice in order to purchase a house, his conduct caused Al-Thani to suffer emotional distress when she went to the bank to obtain her money and was subsequently told that her money was illiquid and that market had failed and she was not going to receive her money.

85.    Morgan's conduct was outrageous in that he never should have recommended a risky investment to a foreigner who had no understanding of the United States investment markets to put her money into a fund that could result in Al-Thani not receiving the money she needed when she needed it.

86.    Morgan acted with reckless disregard of the probability that Al-Thani would suffer emotional distress.

87.    Al-Thani has suffered severe emotional distress in that her relationship with her husband is in serious trouble as a result of her putting their money into a risky investment that has failed and thus resulted in the family not having the money that they needed to purchase a house when they needed to purchase a house.

88.    Morgan's conduct was a substantial factor in causing Al-Thani's severe emotional distress.

Al-Thani v. Wells Fargo & Company et. al.
First Amended Complaint

## TWELFTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

89.     Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 88 of the Complaint.

90.     In the alternative, if defendant's Morgan's conduct does not rise to the level of intentional infliction of emotional distress, then Al-Thani claims that Defendant Morgan's conduct was at least negligent infliction of emotional distress.

91.     Defendant Morgan was negligent.

92.     As previously discussed, Al-Thani suffered serious emotional distress.

93.     Defendant Morgan's negligence was a substantial factor in causing Al-Thani's serious emotional distress.

## THIRTEENTH CAUSE OF ACTION
### CONVERSION

94.     Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 93 of the Complaint.

95.     Al-Thani claims that all defendants wrongfully exercised control over her personal property.

96.     Al-Thani owned a specific sum and easily identifiable $1,750,000.00 that was in her bank account at Wells Fargo Bank.

97.     That a bank teller at her local Wells Fargo Bank sent her to speak with Shalom Morgan about putting her $1,750,000.00 into either a certificate of deposit or a money market fund so that she could obtain a better interest rate on her money yet still maintain the liquidity so that she could purchase a house as soon as one became available.

Al-Thani v. Wells Fargo & Company et. al.
First Amended Complaint

98. That defendant Morgan intentional caused Al-Thani to transfer her money from her bank account to an auction rate security account by telling her that there was no risk and that the money was easily liquidated. When Al-Thani went to obtain her money from the auction rate security, she has been prevented from having access to her $1,750,000.00.

99. Al-Thani did not consent to not having access to her $1,750,000.00.

100. Al-Thani has been harmed in that she no longer has the ability to spend her $1,750,000.00 on a new house.

101. Defendants Morgan, Movsesyan, Wells Fargo & Company, and Wells Fargo Investment, LLC's conduct is a substantial factor in causing Al-Thani not to have access to her $1,750,000.00 plus interest.

FOURTEENTH CAUSE OF ACTION<br>INVALID ARBITRATION CLAUSE

102. Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 101 of the Complaint.

103. Al-Thani opened an investment account with Defendant Wells Fargo Investment, LLC on January 17, 2008.

104. On January 23, 2008, Defendant Morgan had Al-Thani sign a one page document that she was told was necessary regarding her auction account. Al-Thani was not given a copy of the page she signed.

105. The one page signature page belongs to a 12 page Brokerage Account Agreement in which contains an arbitration clause.

106. Al-Thani was never told nor was it explained to her that an arbitration clause existed or that she was signing one. She was never shown the entire arbitration

21

clause in the "Brokerage Account Agreement;" only the signature page was shown to her, and the lines for her signature were pointed out for her to sign without her being allowed to read the entire "Agreement" or the entire arbitration clause.

107.    If Al-Thani had known that claims over any losses were required to be arbitrated, she would not have agreed to such provisions. In fact, had Al-Thani understood that there was an arbitration clause, she would have inquired further into the matter since she was not familiar with American banking or legal procedures. Had Al-Thani been properly informed as to the rights she was relinquishing by signing the document, she never would have done so since all she wanted was to put her money into a safe account for a couple of weeks.

108.    Al-Thani never intended arbitration and never intended to enter into any arbitration agreement. If she had ever been told about the arbitration clause, Al-Thani would never have signed anything given to her by the Defendants and would never have allowed the Defendants to handle her money.

109.    The arbitration clause itself, standing apart from the whole agreement, was induced by fraud mistake and or neglect.

110.    Al-Thani was fraudulently induced into the arbitration clause contained in the "contract."

111.    WHEREFORE, Al-Thani requests that the trial court order a jury trial and demand a judgment rescinding the arbitration clause so that the remaining causes of action could then be resolved.

VI. DAMAGES

112.    Al-Thani demands judgment against defendants for:

Al-Thani v. Wells Fargo & Company et. al.
First Amended Complaint

a.  Actual damages of $1,750,000.00 plus interest as provided by law;

b.  Punitive damages under both federal and state law and at common law for an amount to be proven at trial;

c.  Reasonable and necessary attorney's fees;

d.  Such other relief as the court deems equitable and just.

WHEREFORE, Plaintiff Nathalie Al-Thani respectfully pray that judgment first be entered voiding the arbitration clause and then that judgment be entered against Defendant Wells Fargo & Company, Defendant Wells Fargo Investments, LLC, Defendant Shalom Morgan, Defendant Dan Hilken, and Defendant Andrey Movsesyan, individually and jointly and severally for actually damages, punitive damages, attorney's fees, expert witness fees, costs for copies of depositions and costs of court, prejudgment and post judgment interest as provided by law and for such other and further relief as the Court may deem appropriate under the circumstances.

## VII. JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Respectfully submitted this 13th day of May 2008.

HASSAN LAW FIRM

by:  _/s/_ Mark P. Meuser_____
        Rey Hassan SBN #50717
        Mark P. Meuser SBN #231335
        1801 Bush Street, Suite 304
        San Francisco, CA 94109
        (415) 775-9700 – Telephone
        (415) 775-2507 – Facsimile
        reylaw@earthlink.net
        mpm@markmeuser.com
ATTORNEYS FOR PLAINTIFF

Al-Thani v. Wells Fargo & Company et. al.
First Amended Complaint

1

2

PROOF OF SERVICE

Al-Thani v. Wells Fargo & Company et. al.

USDC Northern District CA CV 08-1745 CW

3

4

I declare that: I am employed in the County of San Francisco. On May 13, 2008, I served the following document(s):

5

6

7

8

FIRST AMENDED COMPLAINT

____ **(by mail)** on all parties in said action, by placing a true copy thereof enclosed in a sealed envelope in a designated area for outgoing mail, addressed as set forth below. At the Hassan Law Firm, mail is placed in that designated area, is given the correct amount of postage and is deposited that same day, in the ordinary course of business, in the United States mailbox in the City of San Francisco, California.

9

10

____ (**by electronic transfer**) I caused such document(s) to be electronically served to the parties on the Service List maintained on Pacer's website for this case. My electronic business address is mpm@markmeuser.com.

11

12

____ **(by personal delivery)** by causing to be personally delivered a true copy thereof to the person and at the street address set forth below.

13

14

____ **(by Federal Express)** delivery, with charges thereon fully prepaid, in a Federal Express collection box, at San Francisco, California, and address as set forth below.

15

16

17

_X____ **(by fax transmission)** on all parties by transmitting said document(s) from our office facsimile machine (415) 775-2507 to facsimile machine number(s) shown below. Following transmission, I received a "transmission report" from our fax machine indicating that the transmission had been transmitted without error.

18

19

20

| Reed Smith, LLP<br>Eric G. Wallis<br>1999 Harrison Street, Suite 2400<br>Oakland, CA 94612<br>(510) 273-8832 | Counsel for Defendants |
|---|---|

21

22

23

    I declare under penalty of perjury and the laws of the United States that the foregoing is true and correct, and that this declaration was executed on May 13, 2008, at San Francisco, California.

24

        __/s/ Mark P. Meuser_____

Mark P. Meuser

25

26

27

28

Al-Thani v. Wells Fargo & Company et. al.
First Amended Complaint