1

2   REY HASSAN, SBN 50717
    MARK P. MEUSER, SBN 231335
3   HASSAN LAW FIRM
    1801 Bush Street, #304
4   San Francisco, CA 94109
    Telephone: (415) 775-9700
5   Fax: ( 415) 775-2507
    E-Mail: reyhassan@yahoo.com
6
7   Attorney for Nathalie Al-Thani, Plaintiff

8

9                   UNITED STATES DISTRICT COURT
10                  NORTHERN DISTRICT OF CALIFORNIA
11                        OAKLAND DIVISION

12

13  NATHALIE AL-THANI,                     Case No.: CV 08-1745 CW

14          Plaintiff,                     MEMORANDUM IN OPPOSITION TO
                                           DEFENDANT WELLS FARGO &
15      Vs.                                COMPANY'S MOTION TO DISMISS

16  WELLS FARGO & COMPANY, WELLS           Date:         August 28, 2008
17  FARGO INVESTMENTS, LLC, SHALOM         Time:         2:00 p.m.
    MORGAN, DAN HILKEN, ANDREY             Courtroom:    2
18  MOVSESYAN, and DOES 1 to 100
    inclusive                              Attached Documents:  Proposed Second
19                                                              Amended
            Defendants.                                         Complaint
20
21                                         Honorable Claudia Wilken
22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

Table of Contents …………………………………………………….. 2

Table of Authorities …………………………………………………….. 3

Introduction …………………………………………………….. 4

Legal Argument

    A. New Facts, raised by the Defendant's Motion to Dismiss, Warrant an Amendment to the Complaint ……………………………….. 5

    B. Plaintiff's Complaint Sufficiently Alleges that Defendant Wells Fargo & Company is a Control Party for the Purposes of Federal Securities Statutes, and thus Dismissal is not Proper ………………………………… 6

    C. The Complaints Allegations are Distinct, and should not be Dismissed ……………………………………………………… 8

    D. As Properly Stated, each Cause of Action Pleads a Claim Upon which Relief can be Granted ……………………………………………….. 10

        1. *The Federal Securities Claims Meet the Requirements of the Predicate Statutes and Supporting Case Law* …………………………. 10

        2. *California Statutes and Common Law Clearly Outline Causes of Action, and Each Element is Alleged with Particularity in the Complaint* ……………………………………………… 13

        3. *Declaratory Relief is the Proper Remedy. Defendants Arbitration Clause is Invalid* ……………………………………… 14

Conclusion …………………………………………………….. 14

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988)............................................................ 11

4

*Corrections USA v. Dawe,* 504 F.Supp.2d 924 (E.D.Cal., 2007) ................................ 8, 10

5

*Dura Pharmaceuticals, Inc., v. Broudo,* 544 U.S. 336 (2005) ........................................ 11

6

*Ernst & Ernst v. Hochfelder,* 425 U.S. 185 (1976).......................................................... 11

7

*Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1568 (9th.Cir. 1990) ..................... 7, 12

8

*Howard v. Everex Systems, Inc.,* 228 F.3d 1057 (9th.Cir. 2000)................................ 7, 12

9

*Miller v. Greensprings Baptist Christian Fellowship Trust,* 2008 WL 793790 (Case No C

10

  07-4776 JL) (N.D.Cal. 2008)................................................................................... 8, 10

11

*Outdoor Media Group, Inc., v. City of Beamont,* 506 F.3d 895 (9th.Cir. 2007) ............. 10

12

*Rose v. Kaplan,* 49 F.3d 1363 (9th.Cir. 1994) ................................................................ 12

13

*Wilkerson v. Butler*, 229 F.R.D. 166 (E.D.Cal., 2005) ..................................................... 9

14

**Statutes**

15

15 USC § 77o.................................................................................................................... 6

16

15 USC § 78t..................................................................................................................... 6

17

**Rules**

18

FRCP 9(b) ....................................................................................................................... 13

19

FRCP 12(b)(6) ...................................................................................................... 8, 10, 12

20

FRCP 12(f)........................................................................................................................ 8

21

FRCP 15(a)(2) .................................................................................................................. 6

22

FRCP 57.......................................................................................................................... 14

23

24

25

26

27

28

Al-Thani v. Wells Fargo & Company et. al.
Opposition to Motion to Dismiss

# INTRODUCTION

Plaintiff Nathalie Al-Thani filed suit against five defendants based on fraudulent misrepresentations and omissions of material fact in relation to a purchase of auction rate securities.  Defendant filed a motion to dismiss as to one party, Wells Fargo & Company, and in the alternative, to dismiss a number of the causes of action based on redundancy.

Defendant's brief brought to light significant facts that were heretofore indiscoverable by Al-Thani. Defendant in its pleadings has represented that the proper party to be sued is Wells Fargo Bank Ltd. Plaintiff attaches as Exhibit 1 to this memorandum a copy of its proposed Second Amended Complaint which resolves the issue as to properly named parties.

As noted by the defendant, auction rate securities enjoyed a long run of success.  For decades, the market was stable because it was bolstered by the actions of the banks that profited from auction rate securities.  In early 2008, that changed, when the three billion dollar auction rate securities market experienced systemic failure.  The buyers that had been plentiful all but disappeared, the holders of auction rate securities lost the access to the liquidity that had been one of the main attractive factors to the investor.

Al-Thani, who never intended to be an investor, was one such investor at the time of the systemic failure.  Her cause of action does not stem from the systemic failure itself, however, or the failure of the defendants to predict the future (as the motion to dismiss mischaracterizes the allegations), but from the failure of the defendants to explain to Al-Thani the risks involved with auction rate securities.  The defendants knew of the risks at the time Al-Thani deposited/invested her money. Defendants were put on notice and were very well aware of the fact she needed the funds on moments notice to purchase the family house. Nonetheless, the defendants chose to stick their head in the sand and

Al-Thani v. Wells Fargo & Company et. al.
Opposition to Motion to Dismiss

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

deliberately ignored her needs for which existed a fiduciary duty.  In addition to these omissions, defendants repeatedly mischaracterized auction rate securities, by stating that they were a CD or Money Market account, convincing Al-Thani that her investment was far more liquid than was actually the case.

These fraudulent statements and material omissions caused, and continue to cause, economic and emotional damage to the plaintiff. A portion of the memorandum outlines the change to the proposed Second Amended Complaint in large part based on the facts stated by the defendant's motion.

## LEGAL ARGUMENT

### A.
### NEW FACTS, RAISED BY THE DEFENDANT'S MOTION TO DISMISS, WARRANT AN AMENDMENT TO THE COMPLAINT.

An online search of the words "Wells Fargo" in the California Secretary of State's filings produces dozens of results – banks, brokers, and other financial services, each with its own separate corporate entity.  It is not at all surprising that plaintiff Al-Thani was unable to keep these corporate entities straight, as she was referred from Wells Fargo Bank, Ltd. to Wells Fargo Investments, LLC, without any indication from those she was referred by that she was, in fact, dealing with a different corporate entity.  The original Complaint, and First Amended Complaint, were brought upon the information and belief of Al-Thani that Wells Fargo & Company was one of the correct corporate entities involved in the series of transactions leading to this litigation.  Subsequent updated information from Defendant Wells Fargo & Company, provided in the motion to dismiss, revealed that the appropriate corporate entity for a variety of the causes of action was in fact Wells Fargo Bank, Ltd., not Wells Fargo & Company.

1    This is not universally true; as will be discussed *infra*, Wells Fargo & Company is still an

2    appropriate party on the basis of federal "control party" liability.  However, for a variety

3    of the state claims, including breach of contract, conversion, and negligent referral, Al-

4    Thani acknowledges that Wells Fargo & Company is not the actual entity involved.  The

5    liable entity in these cases is Wells Fargo Bank, Ltd.

6

7    FRCP 15(a)(2) requires that the second amended complaint, as here, to be made with the

8    leave of the court.  "The court should freely give leave when justice so requires."  FRCP

9    15(a)(2).  The subsequent information provided by defendant (and unknown to Al-Thani

10   at the time of the initial complaint) meets the criteria required; justice should not allow

11   the confusion promulgated by the family of Wells Fargo companies to relieve them of

12   liability.

13

14   For those reasons, Al-Thani offers the proposed Second Amended Complaint, updating

15   and clarifying the various causes of action, and specifically identifying the defendants

16   against which the allegations are made.

17

18

19   **B.**
     **PLAINTIFF'S COMPLAINT SUFFICIENTLY ALLEGES THAT DEFENDANT**
20   **WELLS FARGO & COMPANY IS A CONTROL PARTY FOR THE PURPOSES**
     **OF FEDERAL SECURITIES STATUTES, AND THUS DISMISSAL IS NOT**
21   **PROPER**

22   As mentioned, the proposed Second Amended Complaint continues to maintain that

23   Wells Fargo & Company is liable as a control party for the primary violations of federal

24   securities law of the controlled parties.  This control party liability is governed in two

25   separate sections codified in Title 15 of the United States Code.[1]

26

27

28   _____
     [1] The "control party" section for the 1934 Securities Exchange Act can be found at  15 USC § 78t, and the
     similar section for the 1933 Securities Act can be found at  15 USC § 77o.

Al-Thani v. Wells Fargo & Company et. al.
Opposition to Motion to Dismiss

1    As can be inferred from the name, this liability requires a link to be drawn between the

2    control party and the party being controlled.    To plead a prima facie case, it is not

3    necessary to show the control party's actual participation or exercise of actual power.

4    *Howard v. Everex Systems, Inc.,* 228 F.3d 1057, 1065 (9th.Cir. 2000).    Culpable

5    participation is not necessary; control party liability is premised solely on the relationship

6    between the parties.    *Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1575 (9th.Cir.

7    1990).

8    Defendant's motion to dismiss argues that the mere statement that the alleged control

9    party is a shareholder is insufficient as a matter of law to adequately plead control party

10   liability.    While that assertion, by itself is correct; <u>it is immaterial</u>.    The cases cited by the

11   defendant relate only to cases in which the court looked at a partial shareholder.    *See,*

12   *e.g., Cohen v. Citibank, N.A.,* 954 F.Supp. 621, 629 (S.D.N.Y., 1996).    The wording of

13   *Cohen,* contrary to the assertions of the defendant, fortifies the plaintiff's position.[2]    In

14   this case, there is far more than the bare allegation that Wells Fargo & Company is "a

15   shareholder."    Rather, the complaint alleges, Wells Fargo & Company had control of the

16   voting securities of Wells Fargo Investments, LLC, meeting the requirements for control

17   party liability.    This situation, as alleged from the beginning, is far different than the facts

18   in the cases cited by the defendant; Al-Thani is arguing that Wells Fargo & Company is

19   in fact the complete and total shareholder in the actions of Wells Fargo Investments,

20   LLC, and its employees.

---

[2] "The Securities and Exchange Commission has defined the term as 'the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a [violator], whether through the ownership of voting securities, by contract, or otherwise' ... Rather, the allegations must support a reasonable inference that the alleged violator had the potential power to influence and direct the activities of the primary violator." *Cohen* at 629 (internal citations omitted).    From the original complaint, and to this point, the complaints have supported this inference and should not be dismissed.

7

Since Al-Thani has alleged sufficient facts to create this cause of action as a matter of law, it would be detrimental to the interest of justice to dismiss this cause of action on the basis of a disfavored FRCP 12(b)(6) motion.   Viewed in a light most favorable to the plaintiffs, as required when considering a motion to dismiss, these pleadings are sufficient to give rise to a sufficient cause of action for control party liability against Wells Fargo & Company. *See, e.g., Miller v. Greensprings Baptist Christian Fellowship Trust,* 2008 WL 793790, *2 (Case No C 07-4776 JL) (N.D.Cal. 2008).

## C.
## THE COMPLAINTS ALLEGATIONS ARE DISTINCT, AND SHOULD NOT BE DISMISSED

FRCP 12(f) allows a court to strike redundant causes of action, but interpreting case law has put a high burden on the moving party to show that the material is both redundant and prejudicial.  "Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties."  *Corrections USA v. Dawe,* 504 F.Supp.2d 924, 930 (E.D.Cal., 2007).

Defendant's motion to dismiss does not even hint at any sign of prejudice from the allegedly redundant claims.  On the contrary; although each of the causes of action arises from the same overall set of facts, each has an independent legal base for relief to be granted.[3]

---

[3]It bears noting that the proposed Second Amended Complaint has incorporated one claim into another – the common law fraud allegation has been assimilated into the statutory fraud and misrepresentation claims. The Second Amended Complaint has also dropped the Second Cause of Action contained in the First Amended Complaint. The Second Amended Complaint also adds a new 12th Cause of Action for Negligent Referral against Wells Fargo Bank, Ltd which is a newly added party as a direct response to Defendant's Motion to Dismiss.

8

1    In addition to prejudice, which is not even argued by the defendant, the standard for

2    showing redundancy is in itself high.  "A 'redundant' matter consists of allegations that

3    constitute a needless repetition of other averments or which are foreign to the issue to be

4    denied."  *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D.Cal., 2005).  None of the causes

5    of action in the complaint rise to this level.  While one pleads in the alternative

6    (intentional inflection of emotional distress in contrast with negligent inflection of

7    emotional distress), each of the causes is a separate averment based on independent law.

8    It is not repetitious to aver a state fraud claim just because the federal securities violation

9    was based on fraud, for instance, and neither is it repetitious to aver damages from

10    emotional distress simply because that distress arises from a breach of contract.

11

12    For instance, Defendant argues, on the basis of *Wilkerson*, that the emotional distress

13    claims should be dismissed as being part and parcel of the professional malpractice

14    claims.  Reading *Wilkerson*, though, belies the defendant's arguments.  The allegations in

15    the *Wilkerson* complaint only alleged that the doctor (in the medical malpractice case)

16    knew or should have known that his actions would cause emotional distress.  Those

17    claims were stricken, simply because they did not add anything to the allegations.  Al-

18    Thani's complaint, however, specifically alleges outrageous conduct (in the case of

19    negligent inflection of emotional distress) and intentional action (in the case of intentional

20    inflection of emotional distress).  These allegations go far beyond the bare allegations of

21    *Wilkerson*, and add elements to the allegations that are not part and parcel with the

22    professional malpractice claims – they are, in fact, completely separate.

23

24

25

26

27

28

Al-Thani v. Wells Fargo & Company et. al.
Opposition to Motion to Dismiss

Because the defendant has failed to even allege a sufficient reason to dismiss claims on the basis of redundancy, it is respectfully submitted that this court should leave the determination of those allegations to a decision on the merits. *Corrections USA* at 930.

**D.**
**AS PROPERLY STATED, EACH CAUSE OF ACTION PLEADS A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

The complaint pleads three broad classes of causes of action – federal securities law (Counts 1-2), California state law claims (Counts 3-12), and a claim for declaratory relief based on an invalid arbitration clause (Count 13). In each of these, defendant claims that the requisite elements have not been met, in some cases by mischaracterizing the claims, and in others by mischaracterizing the law.

"A motion to dismiss for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) is viewed with disfavor and is rarely granted." *Miller* at *2, Furthermore, the Court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Outdoor Media Group, Inc., v. City of Beamont,* 506 F.3d 895, 900 (9th.Cir. 2007). Each cause of action in this complaint is complete and should not be dismissed.

*1.*
*The Federal Securities Claims Meet the Requirements of the Predicate Statutes and Supporting Case Law.*

The first and second causes of action relate to section 10(b) of the Securities Exchange Act of 1934, and "control person" liability on the basis of a primary violation thereof. The elements of a section 10(b) claim have been clearly delineated by the United States Supreme Court: (1) a material misrepresentation or omission; (2) scienter; (3) a

Al-Thani v. Wells Fargo & Company et. al.
Opposition to Motion to Dismiss

connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *See Dura Pharmaceuticals, Inc., v. Broudo,* 544 U.S. 336, 341 (2005). Each of these elements is present in the first cause of action.

This cause of action alleges that defendant Morgan materially[4] misrepresented the safety of an auction rate security purchase as safe as a money market account, and materially omitted any mention of risks involved with purchasing auction rate securities, in spite of his actual knowledge of Al-Thani's need that her investment be liquid.

Defendant mischaracterizes Al-Thani's argument as a purported requirement that defendants have predicted the future and tell her that the market was going to crash. Nothing could be further from the truth. Defendant Morgan's statement that the auction rate securities were like a money market account was a misrepresentation of present fact; auction rate securities are not money markets. In addition, his failure to explain to Al-Thani the risks to liquidity involved with auctions was not a failure to predict the future; those risks were both present and real at the time he sold her the securities.

Scienter must be shown by an intent to "deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 (1976). Every version of the complaint has alleged that Morgan's actions were intended to manipulate Al-Thani into purchasing the auction rate securities, in spite of her need to keep the money liquid. In addition, the Supreme Court has not ruled on the question of whether recklessness can suffice for scienter on a civil claim based on section 10(b), but the Ninth Circuit has held that recklessness will suffice

---

[4] A misrepresentation or omission is material if "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988) (internal quotations omitted). In this case, the reasonable investor seeking liquidity in investment, as defendant Morgan knew Al-Thani to be, would have certainly cared about the risk inherent in auction rate securities.

11

1    to meet this element.  *Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1568 (9th.Cir.

2    1990).

3    The complaint clearly shows the connection of this misrepresentation to the purchase of a

4    security, and Al-Thani's reliance thereon.  She additionally suffered an economic loss

5    when her money was not available as she required, and that loss was directly related to

6    her reliance on the misrepresentations.

7

8    Al-Thani has therefore alleged a sufficient cause of action under section 10(b).

9    The second cause of action takes this allegation one step further as relates to Wells Fargo

10   & Company, alleging liability on the "control party" status of Wells Fargo & Company.

11   Two elements are required for this cause of action, (1) a primary violation of federal

12   securities laws; and (2) that the defendant exercised actual power or control over the

13   primary violator.  *Howard v. Everex Systems, Inc.,* 228 F.3d 1057 (9th.Cir. 2000).

14

15   The primary violation has been alleged, as discussed.  However, the most important

16   portion of this analysis is that the determination of whether a party is a control party is an

17   "intensely factual question," requiring the trier of fact to determine the relationship

18   between the parties to determine control.  *See, e.g., Rose v. Kaplan*, 49 F.3d 1363

19   (9th.Cir. 1994).  Such control has been alleged by the complaint, in that Wells Fargo

20   Investments, LLC is part and parcel of the Wells Fargo family of companies, with

21   defendant Wells Fargo & Companies at the top.  There is no way to resolve such an

22   intensely factual issue in the pleadings alone, and thus it would be in violation of the

23   purposes of a Rule 12(b)(6) motion to simply eliminate them.

24

25   //

26   //

27

28

12

Al-Thani v. Wells Fargo & Company et. al.
Opposition to Motion to Dismiss

*2.*

*California Statutes and Common Law Clearly Outline Causes of Action, and Each Element is Alleged with Particularity in the Complaint*

Defendant's motion to dismiss argues primarily that the state law claims are insufficient as to defendant Wells Fargo & Company.   As noted *supra*, the motion to dismiss provided sufficient information for Al-Thani to sort out the various complicated and confusing corporate entities utilizing the "Wells Fargo" moniker and involved in this transaction.   Based on that new information, the Second Amended Complaint has identified the defendants liable under each cause of action, and Wells Fargo & Company is only liable as a "control party".

Based on that information, however, the proposed Second Amended Complaint has clearly delineated which defendants are liable for which causes of action.   This clarification has had the effect of rendering the pleading more succinct and addressing many of defendant's concerns; in addition, the information provided by the defendant has enabled Al-Thani to properly identify an additional appropriate defendant, Wells Fargo Bank, Ltd.

The only additional concern of the defendant is that the complaints for fraud and misrepresentation be pleaded with particularity, as required for those causes of action. FRCP 9(b). From the original complaint to the proposed Second Amended Complaint, Al-Thani has been careful to outline each specific statement and omission giving rise to the causes of action.   The statement of facts carefully delineates each date, conversation, specific statement of the defendant, and specific omission that defendant was under a duty to rectify.   There can be no doubt, under the complaint, what particular situations, statements, and omissions give rise to the causes of action.   The heightened burden of pleading with particularity has been met.

Al-Thani v. Wells Fargo & Company et. al.
Opposition to Motion to Dismiss

*3.*
*Declaratory Relief is the Proper Remedy. Defendants Arbitration Clause is Invalid.*

Defendants argues that the final cause of action, that for declaratory relief re the invalidity of the arbitration clause, should be dismissed simply because declaratory relief is not mandatory and could be resolved in a separate hearing.  The interests of judicial economy would be far better served in resolving this issue under the complaint instead of forcing a separate hearing on the same issue.

FRCP 57, governing declaratory actions, specifically states that, "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."  While the defendant's motion could – by an added step in the process – resolve these issues, FRCP 57 would encourage the simplest resolution.  This claim for declaratory relief is appropriate on the basis of FRCP 57, and persuasive on the basis of judicial economy.

**CONCLUSION**

Therefore, Plaintiff respectfully request this court to allow Plaintiff to file her Second Amended Complaint, to deny Defendant Wells Fargo & Company's Motion to Dismiss, and for whatever other relief this Court deems necessary and proper.

Respectfully submitted this 6th day of August, 2008.

HASSAN LAW FIRM

by: ___/s/ Mark P. Meuser_____
    Rey Hassan SBN #50717
    Mark P. Meuser SBN #231335
    1801 Bush Street, Suite 304
    San Francisco, CA 94109
    (415) 775-9700 – Telephone
    (415) 775-2507 – Facsimile
    reylaw@earthlink.net
    mpm@markmeuser.com
ATTORNEYS FOR PLAINTIFF

Al-Thani v. Wells Fargo & Company et. al.
Opposition to Motion to Dismiss

REY HASSAN, SBN 50717
MARK P. MEUSER, SBN 231335
HASSAN LAW FIRM
1801 Bush Street, #304
San Francisco, CA 94109
Telephone: (415) 775-9700
Fax: ( 415) 775-2507
E-Mail: reyhassan@yahoo.com

Attorney for Nathalie Al-Thani, Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| NATHALIE AL-THANI,<br><br>              Plaintiff,<br><br>       Vs.<br><br>WELLS FARGO & COMPANY, WELLS FARGO BANK, LTD.,  WELLS FARGO INVESTMENTS, LLC, SHALOM MORGAN, DAN HILKEN, ANDREY MOVSESYAN, and DOES 1 to 100 inclusive<br><br>              Defendants. | Case No.: CV 08-1745 CW<br><br>*PROPOSED*<br>PLAINTIFF'S SECOND AMENDED COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

I. INTRODUCTION

1.      Plaintiff's claim germinate from intentional misrepresentation of fact by Defendants Wells Fargo & Company, Wells Fargo Bank, Ltd., Wells Fargo Investments, LLC, Shalom Morgan, Dan Hilken, and Andrey Movsesyan, which induced Plaintiff Nathalie Al-Thani to purchase $1,750,000.00 of auction rate securities. Defendants convinced Al-Thani to purchase a security by not naming it a security but naming it similar to a "money market" fund that is as safe as a certificate of deposit. The

Al-Thani v. Wells Fargo & Company et. al.
Second Amended Complaint

investment adviser who sold the funds to Plaintiff as debt instruments which interest rates

that reset every week. These funds were represented to be without risk and that the funds

could be redeemed within a week. In fact, when Plaintiff Nathalie Al-Thani requested the

funds be redeemed, she was informed that no market existed for these securities and that

they could not be redeemed. These material misrepresentations violated both federal

securities law and state law as detailed herein.

## II. JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant

to Section 27 of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15

U.S.C. § 78aa, Section 22 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C.

§ 77v; 28 U.S.C. § 1331, and 28 U.S.C. § 1332.

3.      Upon information and belief, all defendants reside or have their principal

place of business in the Northern District of California. As jurisdiction is based on the

presence of a federal question, venue is proper under 28 USC § 1391(b)(1).

## III. PARTIES

4.      Plaintiff Nathalie Al-Thani is a citizen of the country of France and is

currently residing in San Francisco, California, within the jurisdiction of the U.S. District

Court for the Northern District of California.

5.      Defendant Wells Fargo & Company is the parent of Wells Fargo Bank,

Ltd., and Wells Fargo Investments, LLC. It is incorporated in Delaware and does

business as a diversified financial services corporation headquartered at 420 Montgomery

Street, San Francisco, California 94104. Defendant Wells Fargo & Company may be

Al-Thani v. Wells Fargo & Company et. al.
Second Amended Complaint

served by serving Corporation Service Company d/b/a CSC – Lawyers Incorporating

Service Company, 2730 Gateway Oaks Dr., Suite 100, Sacramento, CA 95833.

6.      Based upon information and belief, Defendant Wells Fargo Bank, Ltd., is

incorporated in California, with its headquarters and principal place of business in San

Francisco, CA. Defendant Wells Fargo Bank, Ltd., may be served by serving Corporation

Service Company d/b/a CSC – Lawyers Incorporating Service Company, 2730 Gateway

Oaks Dr., Suite 100, Sacramento, CA 95833.

7.      Defendant Wells Fargo Investments, LLC is a broker/dealer in securities

which is a wholly owned subsidiary of Wells Fargo & Company. Its primary place of

business is 420 Montgomery Street, San Francisco, California 94104. It does business in

the jurisdiction of the United States District Court for the Northern District of California.

Defendant Wells Fargo Investments, LLC may be served by serving CSC – Lawyers

Incorporating Service, 2730 Gateway Oaks Dr., Suite 100, Sacramento, CA 95833.

8.      Defendant Shalom Morgan is a Financial Consultant for Wells Fargo

Investments, LLC. He works at the location 1900 Union Street, San Francisco, CA

94123. Defendant Morgan is the individual who misled Plaintiff Al-Thani into

purchasing auction rate securities.

9.      Defendant Dan Hilken is a Senior Vice President of Wells Fargo

Investments, LLC. Hilken is the supervisor of Defendant Morgan. Hilken's office is

located at 770 Tamalpais Drive, Suite 220, Corte Madera, CA 94925.

10.     Defendant Andrey Movsesyan is a Financial Consultant for Wells Fargo

Investments, LLC. He works at the location 1900 Union Street, San Francisco, CA

Al-Thani v. Wells Fargo & Company et. al.
Second Amended Complaint

94123. Movsesyan's name appears on the "Transaction Confirmation" along with defendant Morgan as a financial consultant for Al-Thani.

11.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 though 100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and therefore alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrence herein alleged and are agents of each other and or one another, and plaintiff's injuries were proximately caused by the negligence and or acts of the defendants, and each of them.

IV. FACTS

12.     Plaintiff Nathalie Al-Thani (hereinafter Al-Thani) is a customer of both Defendant Wells Fargo Bank, Ltd., and Wells Fargo Investments, LLC, and does business through its employee, agent, and representative, investment adviser or financial consultants Shalom Morgan and Andrey Movsesyan.

13.     On or about January 17, 2008, Al-Thani entered into the Wells Fargo Bank branch located on 1900 Union Street, San Francisco, CA 94123. Approximately a week earlier, Al-Thani had $1,750,000.00 wired to her account with Wells Fargo Bank, Ltd.

14.     Al-Thani told the bank teller that she was interested in purchasing a certificate of deposit with the money. The teller told Al-Thani that a certificate of deposit was going to lock up the money for five months. Al-Thani told the teller that she needed her money liquid and thus a certificate of deposit for five months would not be suitable

for her needs. The teller then introduced Al-Thani to Shalom Morgan. The teller never indicated that Al-Thani was in fact going to another corporate entity for this advice.

15.     Al-Thani told Morgan that she had just recently sold her house in Germany and that she needed this money in the next few weeks to purchase a house.

16.     Morgan offered to break down the money and invest it for her so that she could gain six percent interest. Al-Thani told Morgan that she was not looking to invest the money but that she needed the money to be extremely liquid so that she could purchase a house.

17.     Morgan then told Al-Thani about auction rate securities. He said that they were as safe as a Money Market or Certificate of Deposit, that the money in these accounts were making close to five percent interest. Morgan claimed that the funds were rated AAA and that they were perfectly safe, and because they were auctioned every week, all Al-Thani had to do was notify him on Wednesday and she could have her money back on Friday. Al-Thani constantly asked Morgan about the risks and Morgan kept telling her that it was a perfectly safe way to hold the money.

18.     Morgan also told Al-Thani that auction rate securities have nothing to do with the stock market and thus she should not even watch the stock market reports on television, as they are not related to auction rate securities.

19.     On or about January 17, 2008, Al-Thani was persuaded to purchase approximately $1,750,000.00 in auction rate securities. The money was used to purchase 70 shares in the Neuberger Berman Realty. The financial consultants were Defendant Morgan and Movsesyan.

20.     Morgan told Al-Thani that the principal amount of the investment was at no risk, that it was a AAA rated fund, and that Morgan only dealt with safe investments. Morgan told Al-Thani that Wells Fargo was the only bank that could offer her these auction rate accounts.

21.     On or about February 6, 2008, Al-Thani informed Morgan that she needed the funds liquidated so that she could purchase a house in San Francisco. On or about February 8, 2008, Al-Thani was informed by Morgan that he missed the deadline and thus Al-Thani did not have her money when she needed it.

22.     On or before February 13, 2008, Al-Thani informed Morgan a second time that she needed the funds liquidated. On or about February 15, 2008, Al-Thani was informed by Morgan that the bank did not auction in time.

23.     On or before February 20, 2008, Al-Thani informed Morgan a third time that she needed the funds liquidated. On or about February 22, 2008, Al-Thani was informed by Morgan that he could not liquidate the fund.

24.     On or before February 27, 2008, Al-Thani informed Morgan a fourth time that she needed the funds liquidated. On or about February 29, 2008, Al-Thani was informed by Morgan that there was a problem with the money market and that the funds cannot be liquidated.

25.     Because Al-Thani is a French citizen and does not have great knowledge of the United States banking operations, she went with a friend on March 3, 2008, to speak with Morgan about liquidating the fund. Al-Thani was told that there was a problem with the auction that had never occurred before. Al-Thani was told by Morgan

that this was a problem that had never occurred before despite the fact that auction rate

securities had failed in the past.

26.    Morgan told Al-Thani that this was actually a good thing that the auction

had failed because this means that the bank had to pay her a higher rate of interest. Al-

Thani told Morgan that she was not concerned about interest, she just wanted her money

so that she could purchase a house. Furthermore, the interest rate that Al-Thani has been

receiving is actually less now then she was receiving at the beginning.

27.    On or about March 7, 2008, Al-Thani was informed by Morgan that the

auction did not occur and thus the funds could not be liquidated.

28.    Al-Thani then went to visit defendant Morgan's supervisor, defendant Dan

Hilken.

29.    Based upon the recommendation of Defendant Dan Hilken, Al-Thani sent

her friend who had a better understanding of the banking process to speak with Chuck

Gaggs, a senior officer with Wells Fargo Bank, Ltd. Chuck Gaggs told Al-Thani's friend

that Wells Fargo would give Al-Thani a line of credit using the money in the auction rate

security as collateral.

30.    A line of credit was not acceptable to Al-Thani since the money was

supposed to be put in a completely safe account that could be withdrawn at anytime so

that Al-Thani could purchase a house. Al-Thani did not need a loan to purchase the house

because the money was supposed to be in her bank account for a cash purchase.

31.    Beginning in the summer of 2007, some auctions for auction rate

securities backed by sub-prime debt began to fail. In the fall-winter of 2007, more

auctions began to fail. However, Defendants, who knew or should have known of the

Al-Thani v. Wells Fargo & Company et. al.
Second Amended Complaint

1  volatility and risks of auction rate securities continued to encourage investors like Al-

2  Thani to purchase auction rate securities and continued to represent to investors that these

3  securities were the same as cash or money markets and were highly liquid, safe

4  investments for short-term investing, without any disclosure of the risks associated with

5

6  the securities including the risk of losing the investment itself.

7       32.    On Thursday, February 7, 2008, auctions for these securities began to fail

8  *en masse*, due to auction-running banks' refusal to step in to bid on the excess supply. On

9  February 13, 2008, 80% of auctions failed due to concerns of investors about the credit

10

11  ratings of the insurers, by proxy, made everything else they had insured looked

12  vulnerable including municipal bonds. On February 20, 2008, 62% failed (395 out of 641

13  auctions).

14

15                          V. CAUSES OF ACTION

16                          FIRST CAUSE OF ACTION
    FEDERAL SECURITIES EXCHANGE VIOLATIONS – SECTION 10(B) AND RULE
17                                    10b-5
         (As to Defendants Wells Fargo Investments, LLC, Morgan, Hilkin, and Movsesyan)
18

19       33.    Al-Thani repeats and makes a part hereof each and every allegations set

20  forth in paragraphs 1 through 32 of the Complaint.

21       34.    The fraudulent misrepresentations and omissions to state material facts by

22

23  Defendants' agents, employees or representatives violates Section 10(b) of the

24  regulations promulgated under the Securities Exchange Act of 1934, as codified in 15

25  USC §78j, and the regulations promulgated thereunder, which provide as follows:

26

27        "§240.10b-5 Employment of manipulative and deceptive devices.
          It shall be unlawful for any person, directly or indirectly, by the use of any means
28        or instrumentality of interstate commerce, or of the mails or of any facility of any
          national securities exchange,

                                        8

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state material fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

35.    The named Defendants, utilizing interstate commerce, violated rule 10b-5 in the following respects:

       a.    Representing that the investment was a money market when in fact the investment was not a money market.

       b.    Representing that the funds were without any significant risk;

       c.    Representing that the funds could be liquidated without condition upon proper notification;

       d.    Representing that the funds were the same as certificate of deposits but carried higher interest rates on a short term basis.

36.    These misstatements of material fact were relied upon by Al-Thani to her detriment.

37.    Named Defendants, through their agents, employees or representatives also omitted to state material facts which were relied upon by Al-Thani to her detriment. Specifically, Defendants failed to disclose that there must be a buyer for these funds to be sold, that the funds did in fact have significant risk, and that the funds were unable to be liquidated on proper notice if there was not a market or buyer for the fund at that time. Such omissions to state material fact were relied upon by Al-Thani to her financial detriment.

Al-Thani v. Wells Fargo & Company et. al.
Second Amended Complaint

38.     These acts and practices and course of business operate as a fraud and deceit upon the Plaintiff and other customers similarly situated.

39.     The named Defendants acted intentionally and with reckless disregard in disseminating this misleading information and in failing to disclose material facts to the Plaintiff and other customers similarly situated.

SECOND CAUSE OF ACTION
FEDERAL SECURITIES EXCHANGE ACT VIOLATIONS - PLAINTIFF'S CLAIMS AGAINST THE CONTROL PERSON DEFENDANT FOR VIOLATIONS OF SECTION 20(a)
(As to Defendants Wells Fargo & Company, Wells Fargo Investments, LLC, Morgan, Hilkin, and Movsesyan).

40.     Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 39 of the Complaint.

41.     This claim is brought pursuant to Section 20(a) of the Securities Exchange Act of 1934, as codified in 15 USC § 78t, against Wells Fargo & Company, as control persons of the broker/dealer Defendant Wells Fargo Investments, LLC and its employees defendant Morgan, Hilkin, and Movsesyan. It is appropriate to treat these Defendants as a group for pleading purposes and to presume that the misleading information complained about herein is the collective action of the control person Defendant.

42.     As detailed in the First Cause of Action, there was a violation of underlying securities law, specifically Section 10(b) of the Securities Exchange Act of 1934.

43.     The control person Defendant acted as a controlling person of the investment adviser within the meaning of Section 20(a) of the Exchange Act for the reasons alleged herein. By virtue of their operational and management control of the investment adviser respective businesses and systematic involvement in the fraudulent

10

Al-Thani v. Wells Fargo & Company et. al.
Second Amended Complaint

scheme alleged herein, the control person defendant had the power to influence and control and did influence and control, directly or indirectly, the decision making and actions of the investment adviser, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The control person Defendant had the ability to prevent the issuance of the statements alleged to be false and misleading or could have caused such statements to be corrected.

44.    In particular, the control person Defendant had direct and supervisory involvement in the operations of the investment adviser and, therefore, is presumed to have had the power to control or influence the particular transaction giving rise to the securities violations as alleged herein, and to have exercised same.

45.    As set forth above, the investment adviser violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of its positions as a controlling person, the control person Defendant is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the investment adviser's wrongful conduct, Plaintiff and other similarly situated customers suffered damages in connection with their purchase of these funds as set out herein.

THIRD CAUSE OF ACTION
VIOLATION OF CALIFORNIA CIVIL CODE §1709 - INTENTIONAL
MISREPRESENTATION
(As to Defendants Wells Fargo Investments, LLC, Morgan, Hilkin, and Movsesyan)

46.    Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 45 of the Complaint.

47.    Defendant violated Civil Code §1709 when they willfully deceived Al-Thani by making false representations of past or existing material fact in the following respects:

a.  Representing that the investment was a money market;

b.  Representing that the funds were without any significant risk;

c.  Representing that the funds could be liquidated without condition upon proper notice;

d.  Representing the funds were as safe as certificate of deposits but carried higher interest rates on a short term basis.

48.    Defendants had knowledge that the auction rate securities were not as safe as certificate of deposits in the following respects:

a.  Auction rate securities are not cash alternatives, like money market funds, and instead, are complex, long-term financial instruments with 30 year maturity dates, or longer;

b.  Auction rate securities are only liquid at the time of sale because the auction market was artificially supported and manipulated by banking entities to maintain the appearance of liquidity and stability;

c.  Auction rate securities are only able to be converted into cash depended entirely on the perpetuations of the artificial auction market being maintained by various banking entities, as was known, or should have been known, by Defendants.

49.    Defendants made these willful misrepresentations to Al-Thani to induce her to place her money in auction rate securities and thus put her money in a more risky investment.

50.    Since Defendant has been unable to liquidate Plaintiff's money, Plaintiff has suffered a financial detriment.

12

FOURTH CAUSE OF ACTION
NEGLIGENT MISREPRESENTATION
(As to Defendants Wells Fargo Investments, LLC, Morgan, Hilkin, and Movsesyan)

51.     Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 50 of the Complaint.

52.     Pleading in the alternative, Plaintiff also alleges that the acts and omissions of Defendants through its employees, agents or representatives were negligent. Defendants knew or should have known that these funds were not the same as certificate of deposits. Defendants knew or should have known that the funds potentially carried a high degree of risk and that the fund could only be liquidated if a buyer existed.

53.     By Morgan's own admissions as detailed herein, he did not know the risks of the financial products he was selling to the Plaintiff and other unsuspecting customers. Such failure to investigate the true nature of the investment products which he sold was negligent and that negligence was a proximate cause of damage to the Plaintiff herein.

54.     Moreover, Defendants through their employees, agents or representatives negligently misrepresented the risk and liquidity of the funds and such negligent misrepresentations were a proximate cause of damage to the Plaintiff. Simply put, if the Defendant had disclosed the true nature of the funds, their risk and potential lack of liquidity, Al-Thani would have never put the money to purchase a house into these funds.

FIFTH CAUSE OF ACTION
VIOLATIONS OF CALIFORNIA CIVIL CODE § 1572 – ACTUAL FRAUD
(As to Defendants Wells Fargo Investments, LLC, Morgan, Hilkin, and Movsesyan)

55.     Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 54 of the Complaint.

Al-Thani v. Wells Fargo & Company et. al.
Second Amended Complaint

56.    Defendants violated § 1572 of the Civil Code because they made false representations of a past or existing material fact in the following respects:

    a.    Representing that the investment was a money market;

    b.    Representing that the funds were without any significant risk;

    c.    Representing that the funds could be liquidated without condition upon proper notice;

    d.    Representing the funds were as safe as certificate of deposits but carried higher interest rates on a short term basis.

57.    Defendants had knowledge that the auction rate securities were not as safe as certificate of deposits in the following respects:

    a.    Auction rate securities are not cash alternatives, like money market funds, and instead, are complex, long-term financial instruments with 30 year maturity dates, or longer;

    b.    Auction rate securities are only liquid at the time of sale because certain broker-dealers in the auction market were artificially supporting and manipulating the market to maintain the appearance of liquidity and stability;

    c.    Auction rate securities are only able to be converted into cash depended entirely on the perpetuations of the artificial auction market being maintained by some broker-dealers.

58.    Defendants intended that Al-Thani rely upon their representation that the auction rate securities were a safe investment.

Al-Thani v. Wells Fargo & Company et. al.
Second Amended Complaint

59.     Plaintiff was a French citizen who had recently moved to the United States and she went to her bank teller and asked to put the money in the safest investment possible because she needed to use the money to purchase a house in the next couple of weeks. The Wells Fargo bank teller sent her over to Defendant Morgan who informed Al-Thani that auction rate securities were a money market and that she would obtain a better interest rate on her money and have the same liquidity. Plaintiff was justified in relying upon the representation of Defendant Morgan.

60.     Plaintiff Al-Thani has not been able to withdraw her funds and thus has been damaged by the fact that she has lost $1,750,000.00.

### SIXTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
(As to Defendants Wells Fargo Bank, Ltd., Wells Fargo Investments, LLC, Morgan, Hilkin, and Movsesyan)

61.     Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 60 of the Complaint.

62.     As stockbrokers who trades in speculative securities, Defendants Wells Fargo Investments, LLC, Morgan, Hilkin, and Movsesyan owed a fiduciary duty to Plaintiff Al-Thani to do the following:

a.   To make sure that Al-Thani understood the investment risks in light of her financial situation

b.   To inform Al-Thani that speculative investments are not suitable if defendant believes that the client is unable to bear the financial risks involved; and

c.   Not to solicit client's purchase of speculative securities that the stockbroker considers to be beyond the client's risk threshold.

Al-Thani v. Wells Fargo & Company et. al.
Second Amended Complaint

63.    Named Defendants knew that Al-Thani did not want a risky investment because of her need to have quick access to her money so that she could purchase a house.

64.    As a result of named Defendants not doing a proper risk assessment of Plaintiff Al-Thani and by failing to properly warn Al-Thani of the risks of the investment, such breach of fiduciary duties were a proximate and producing cause of damages to Al-Thani.

65.    Defendant Wells Fargo Bank, Ltd., owed a fiduciary duty to Al-Thani based on the contractual relationship between the Bank and Al-Thani. When the Bank was put on notice of Al-Thani's financial needs, and understood to advise her in who she should seek to make investments with, the Bank owed her a fiduciary duty to advise her reasonably. Instead of making her aware of all her options, the teller negligently referred the customer to a sister organization without regard to Al-Thani's specific needs.

SEVENTH CAUSE OF ACTION
PROFESSIONAL MALPRACTICE
(As to Defendants Wells Fargo Investments, LLC, Morgan, Hilkin, and Movsesyan)

66.    Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 65 of the Complaint.

67.    Defendant Shalom Morgan is currently registered with the following self-regulatory organizations and states:

    a.    Financial Industry Regulatory Authority, registered as of January 22, 2004;

    b.    NASDAQ Stock Market, registered as of July 12, 2006;

    c.    State of California, registered as of October 28, 2004;

    d.    State of Oregon, registered as of February 2, 2007;

16

e.   State of Texas, registered as of February 2, 2007;

f.   State of Washington, registered as of February 2, 2007;

g.   State of New York, registered as of March 20, 2007;

h.   State of Florida, registered as of July 17, 2007;

i.   State of Pennsylvania, registered as of September 19, 2007;

j.   State of Virginia, registered as of February 19, 2008.

68.    Defendant Andrey Movesesyan is currently registered with the following self-regulatory organizations and states:

a.   Financial Industry Regulatory Authority, registered as of November 3, 2006;

b.   NASDAQ Stock Market, registered as of November 3, 2006;

c.   State of California, registered as of November 20, 2006.

69.    Defendant Dan Hilken is a Senior Vice President and Associate Regional Manager with Wells Fargo Investment, LLC, and was involved in this present litigation after Defendant Morgan was unable to liquidate Al-Thani's accounts.

70.    All three individually named defendants are individuals who are professionals in the financial investment world.

71.    Defendant Morgan failed to use the skill and care that a reasonably careful financial consultant would have used in similar circumstances. A reasonably careful financial consultant would have had Al-Thani fill out a form to properly ascertain her risk level. Upon discovering Al-Thani's low risk tolerance, a reasonably careful financial consultant would have advised Al-Thani of the risks involved in auction rate securities so that she could make an informed decision based on all the risks.

Al-Thani v. Wells Fargo & Company et. al.
Second Amended Complaint

72.     Defendants were negligent in making representations of a past or existing material fact in the following respects:

  a. Representing that the investment was a money market;

  b. Representing that the funds were without any significant risk;

  c. Representing that the funds could be liquidated without condition upon proper notice;

  d. Representing the funds were as safe as certificate of deposits but carried higher interest rates on a short term basis.

73.     Plaintiff is unaware of Defendant Movsesyan's involvement in the transaction but does know that Defendant Movsesyan's name appeared upon the transaction confirmation as a financial consultant.

74.     Defendant Hilken as a Senior Vice President is a supervisor of Morgan and Movsesyan and as such, owed a duty to hire, train, and supervise the financial consultants so that they do not fall beneath the standard of care owed to clients of Wells Fargo Bank, Ltd., and Wells Fargo Investment, LLC.

EIGHTH CAUSE OF ACTION<br>BREACH OF CONTRACT<br>(As to Defendants Wells Fargo Investments, LLC, Morgan, and Movsesyan)

75.     Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 74 of the Complaint.

76.     Al-Thani claims that she and Defendant Wells Fargo Investment, LLC, and Defendants Morgan and Movsesyan entered into a contract whereby Defendants Morgan and Movsesyan were to put her $1,750,000.00 into a money market that was as safe as a certificate of deposit whereby she might have easy access to her money while obtaining a higher interest rate for her money.

18

77.    Al-Thani claims that Defendants Wells Fargo Investment, LLC and Morgan and Movsesyan breached this contract when they did not return her money to her on Friday, February 8, 2008, or any subsequent Fridays after she had made a timely request for her money to be liquidated.

78.    Al-Thani also claims that Defendants Wells Fargo Investments, LLC, Morgan, and Movsesyan's breach of this contract caused harm to Al-Thani for which defendants and all of them should pay.

NINTH CAUSE OF ACTION
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(As to Defendants Wells Fargo Investments, LLC, and Morgan)

79.    Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 78 of the Complaint.

80.    When Defendant Morgan pushed Al-Thani into investing into auction rate securities knowing that she needed the money on short notice in order to purchase a house, his conduct caused Al-Thani to suffer emotional distress when she went to the bank to obtain her money and was subsequently told that her money was illiquid and that market had failed and she was not going to receive her money.

81.    Morgan's conduct was outrageous in that he never should have recommended a risky investment to a foreigner who had no understanding of the United States investment markets to put her money into a fund that could result in Al-Thani not receiving the money she needed when she needed it.

82.    Morgan acted with reckless disregard of the probability that Al-Thani would suffer emotional distress.

83.    Al-Thani has suffered severe emotional distress in that her relationship with her husband is in serious trouble as a result of her putting their money into a risky

investment that has failed, and thus resulted in the family not having the money that they needed to purchase a house when they needed to purchase a house.

84.     Morgan's conduct was a substantial factor in causing Al-Thani's severe emotional distress.

TENTH CAUSE OF ACTION
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(As to Defendants Wells Fargo Investments, LLC, and Morgan)

85.     Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 84 of the Complaint.

86.     In the alternative, if defendant's Morgan's conduct does not rise to the level of intentional infliction of emotional distress, then Al-Thani claims that Defendant Morgan's conduct was at least negligent infliction of emotional distress.

87.     Defendant Morgan was negligent.

88.     As previously discussed, Al-Thani suffered serious emotional distress.

89.     Defendant Morgan's negligence was a substantial factor in causing Al-Thani's serious emotional distress.

ELEVENTH CAUSE OF ACTION
CONVERSION
(As to Defendants Wells Fargo Bank, Ltd., Wells Fargo Investments, LLC, Morgan, Hilkin, and Movsesyan)

90.     Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 89 of the Complaint.

91.     Al-Thani claims that Defendants wrongfully exercised control over her personal property.

92.     Al-Thani owned a specific sum and easily identifiable $1,750,000.00 that was in her bank account at Wells Fargo Bank, Ltd.

20

93.     That a bank teller at her local Wells Fargo Bank sent her to speak with Shalom Morgan about putting her $1,750,000.00 into either a certificate of deposit or a money market fund so that she could obtain a better interest rate on her money yet still maintain the liquidity so that she could purchase a house as soon as one became available.

94.     That defendant Morgan intentional caused Al-Thani to transfer her money from her bank account to an auction rate securities account by telling her that there was no risk and that the money was easily liquidated. When Al-Thani went to obtain her money from the auction rate securities, she has been prevented from having access to her $1,750,000.00.

95.     Al-Thani did not consent to not having access to her $1,750,000.00.

96.     Al-Thani has been harmed in that she no longer has the ability to spend her $1,750,000.00 on a new house.

97.     The conduct of Defendants is a substantial factor in causing Al-Thani not to have access to her $1,750,000.00 plus interest.

TWELFTH CAUSE OF ACTION
NEGLIGENT REFERRAL
(As to Defendant Wells Fargo Bank, Ltd.)


98.     Al-Thani repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 97 of the Complaint.

99.     Defendant Wells Fargo Bank, Ltd., owed to its customer a fiduciary duty of due care in advising its customer Al-Thani in response to her inquiries about the best use of her funds, in accordance with her needs.

Al-Thani v. Wells Fargo & Company et. al.
Second Amended Complaint

100.    Al-Thani deposited the sum of $1,750,000 in her Wells Fargo Bank account, and then sought advice from the Bank's agent and employee in putting the money in the proper account so as to maintain liquidity. Al-Thani specifically indicated to the Bank her intent to rely upon their advice.

101.    Defendant Wells Fargo Bank, Ltd., through its agent and employee, failed to fully and materially disclose all material facts and adequately advise her of her options, instead simply referring her to a sister company, breaching the duty owed to their customer.

102.    Upon information and belief, Wells Fargo Bank, Ltd., regularly refers customers to Wells Fargo Investments, LLC, a sister company, without regard for the best interests of the client, in spite of knowing the client's reliance on this advice.

103.    Defendant Wells Fargo Bank, Ltd., in breaching its duty to Al-Thani, actually and proximately caused her to lose access to the money that she needed.

FOURTEENTH CAUSE OF ACTION<br>INVALID ARBITRATION CLAUSE

104.    Al-Thani repeats and makes a part hereof each and every allegations set forth in paragraphs 1 through 101 of the Complaint.

105.    Al-Thani opened an investment account with Defendant Wells Fargo Investment, LLC on January 17, 2008.

106.    On January 23, 2008, Defendant Morgan had Al-Thani sign a one page document that she was told was necessary regarding her auction account. Al-Thani was not given a copy of the page she signed.

107.    The one page signature page belongs to a 12 page Brokerage Account Agreement in which contains an arbitration clause.

Al-Thani v. Wells Fargo & Company et. al.
Second Amended Complaint

108.   Al-Thani was never told nor was it explained to her that an arbitration clause existed or that she was signing one. She was never shown the entire arbitration clause in the "Brokerage Account Agreement"; only the signature page was shown to her, and the lines for her signature were pointed out for her to sign without her being allowed to read the entire "Agreement" or the entire arbitration clause.

109.   If Al-Thani had known that claims over any losses were required to be arbitrated, she would not have agreed to such provisions. In fact, had Al-Thani understood that there was an arbitration clause, she would have inquired further into the matter since she was not familiar with American banking or legal procedures. Had Al-Thani been properly informed as to the rights she was relinquishing by signing the document, she never would have done so since all she wanted was to put her money into a safe account for a couple of weeks.

110.   Al-Thani never intended arbitration and never intended to enter into any arbitration agreement. If she had ever been told about the arbitration clause, Al-Thani would never have signed anything given to her by the Defendants and would never have allowed the Defendants to handle her money.

111.   The arbitration clause itself, standing apart from the whole agreement, was induced by fraud mistake and or neglect.

112.   Al-Thani was fraudulently induced into the arbitration clause contained in the "contract."

113.   WHEREFORE, Al-Thani request that the trial court order a jury trial and demand a judgment rescinding the arbitration clause so that the remaining causes of action could be resolved.

Al-Thani v. Wells Fargo & Company et. al.
Second Amended Complaint

VI. DAMAGES

114.    Al-Thani demands judgment against defendants for:

    a.   Actual damages of $1,750,000.00 plus interest as provided by law;

    b.   Punitive damages under both federal and state law and at common law for an amount to be proven at trial;

    c.   Reasonable and necessary attorney's fees;

    d.   Such other relief as the court deems equitable and just.

WHEREFORE, Plaintiff Nathalie Al-Thani respectfully pray that judgment first be entered voiding the arbitration clause and then that judgment be entered against Defendant Wells Fargo & Company, Defendant Wells Fargo Bank, Ltd., Defendant Wells Fargo Investments, LLC, Defendant Shalom Morgan, Defendant Dan Hilken, and Defendant Andrey Movsesyan, individually and jointly and severally for actually damages, punitive damages, attorney's fees, expert witness fees, costs for copies of depositions and costs of court, prejudgment and post judgment interest as provided by law and for such other and further relief as the Court may deem appropriate under the circumstances.

VII. JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Respectfully submitted this __ day of _____, 2008.

HASSAN LAW FIRM

by: _____
        Rey Hassan SBN #50717
        Mark P. Meuser SBN #231335
        1801 Bush Street, Suite 304
        San Francisco, CA 94109

Al-Thani v. Wells Fargo & Company et. al.
Second Amended Complaint

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(415) 775-9700 – Telephone
(415) 775-2507 – Facsimile
reylaw@earthlink.net
mpm@markmeuser.com
ATTORNEYS FOR PLAINTIFF

Al-Thani v. Wells Fargo & Company et. al.
Second Amended Complaint