1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REY HASSAN, SBN 50717
MARK P. MEUSER, SBN 231335
HASSAN LAW FIRM
1801 Bush Street, #304
San Francisco, CA 94109
Telephone: (415) 775-9700
Fax: (415) 775-2507
E-Mail: reyhassan@yahoo.com

Attorney for Nathalie Al-Thani, Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

NATHALIE AL-THANI,

        Plaintiff,

   Vs.

WELLS FARGO & COMPANY, WELLS
FARGO INVESTMENTS, LLC, SHALOM
MORGAN, DAN HILKEN, ANDREY
MOVSESYAN, and DOES 1 to 100
inclusive

      Defendants.

Case No.: CV 08-1745 CW

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL
ARBITRATION, AND DECLARATION
OF MARK P. MEUSER

Date:         August 28, 2008
Time:        2:00 p.m.
Courtroom:    2
Attached Documents: Exhibits 1 & 2 to
                Meuser Declaration

Honorable Claudia Wilken

Al-Thani v. Wells Fargo & Company et. al.
MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

Table of Contents ……………………………………………………. 2

Table of Authorities …………………………………………………. 3

Preliminary Statement ………………………………………………. 4

Statement of Facts

    *Defendants Took Advantage of the Fact that Nathalie's Native Tongue is Not English* ……………………………………………………………….. 4

    *Defendants Demanded that Nathalie Sign an Undefined, One-Page Paper One Week After Defendants Purchased Auction Rate Securities with Nathalie's Money* ……………………………………………………………………. 5

Summary of Legal Argument …………………………………….. 7

Legal Argument

    I.    The Court Should Refuse to Honor an Unconscionable Contract and the Arbitration Clause Contained Therein ……………………. 8

        A.    Procedural Unconscionability ……………………. 9

            1.    *Oppression: By Purchasing the Auction Rate Security Before Nathalie had an Opportunity to Review any Proposed Contract, Defendants Robbed Nathalie of a Meaningful Opportunity to Negotiate or Reject the Terms of Any Potential Agreement.* ………………. 9

            2.    *Surprise: Nathalie is Surprised that a Document Necessary for the Auction is Now Being Proffered by the Defendants as the Acknowledgment to the Account Agreement* 13

        B.    Substantive Unconscionability: The Terms of the Agreement are Substantively Unconscionable where Defendants are Attempting to Hide Their Misconduct under the Venerations of a Purportedly Valid Acknowledgment …………………………. 14

    II.    Defendants' Principal Authority Agrees with Nathalie's Position and Her Arguments Against Compelling Arbitration ……………. 17

Conclusion ……………………………………………………. 18

Al-Thani v. Wells Fargo & Company et. al.
MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

# TABLE OF AUTHORITIES

1

2  **Cases**

3  *A & M Produce Corporation v. FMC Corporation*, 135 Cal.App.3d 473 (Cal.App.4.Dist.

4      1982) ......................................................................................................................... 12

5  *American Software Inc. v. Ali*, 46 Cal.App.4th 1386 (Cal.App.1.Dist. 1996)............ 15, 16

6  *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (Cal. 2000) ... 8

7  *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938 (1995) ......................................... 8

8  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) ............................. 8, 9, 11

9  *Kinney v. United Healthcare, Inc.*, 70 Cal.App.4th 1322 (Cal.App.4.Dist. 1999) .... passim

10  *Stern v. Cingular Wireless*, 453 F.Supp.2d 1143 (C.D.Cal., 2006)....................... 7, 17, 18

11  *Stirlen v. Supercuts, Inc.,* 51 Cal.App.4th 1519 (1997) ...................................................... 9

12  *Szetela v. Discover Bank,* 97 Cal.App.4th 1094 (2002).................................................... 11

13  *Williams v. Walker-Thomas Furniture Company*, 350 F.2d 445 (D.C. Cir. 1965)....... 8, 10

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PRELIMINARY STATEMENT

Defendants' Motion to Compel Arbitration should be denied.

It should be denied on the grounds that: 1) That the Arbitration Clause of the Brokerage Account Agreement (the "Account Agreement") is unconscionable; 2) That Defendants never provided Nathalie with a copy of the Account Agreement; and 3) That Defendants did not provide Nathalie the opportunity to read the Account Agreement prior to purchasing Auction Rate Securities. Nathalie posits that she should not be subject to an arbitration clause that the Defendants actively concealed from her.

Defendants, and especially Wells Fargo Investments, seeks to compel arbitration on the basis an Account Agreement. This Account Agreement is unconscionable. The First Amended Complaint pleads that the Defendants induced Nathalie to invest in auction rate securities. After Nathalie entrusted the Defendants with her money, Defendants demanded that she sign a piece of paper that was necessary for the account which subsequently turned out to be a Client Acknowledgement/Agreement. Defendants seek to compel arbitration based upon the Account Agreement which is supposedly acknowledged received by Nathalie in the mischaracterized executed Client Acknowledgement/Agreement.

## STATEMENT OF FACTS

*Defendants Took Advantage of the Fact that Nathalie's Native Tongue is Not English*

On January 17, 2007, Plaintiff Nathalie Al-Thani ("Nathalie"), a native citizen of France, approached Defendants Wells Fargo Bank to purchase a certificate of deposit. Nathalie informed defendants that she planned on purchasing a house in California. While she searched for a house, she wanted her money in a safe, interest-bearing bank account.

Al-Thani v. Wells Fargo & Company et. al.
MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

After the teller at Wells Fargo Bank informed Nathalie that a certificate of deposit would lock up the $1,750,000.00 for a minimum of five (5) months, Nathalie stated that she needed the funds <u>more</u> liquid, because of her desire to purchase a house.

As a native citizen of France, French is Nathalie's primary language. While Nathalie is able to maintain a conversation in English, she does not, nor at the time she discussed depositing $1,750,000 with Defendants did she, understand the nuances of the English language. Her conversational understanding of the English language is further reduced when she is required to read documents, especially documents of a legal nature. The fact that she is not a native English speaker would have been evident to Defendant Morgan.

*Defendants Demanded that Nathalie Sign an Undefined, One-Page Paper One Week After Defendants Purchased Auction Rate Securities with Nathalie's Money*

The teller at Wells Fargo Bank referred Nathalie to Defendant Shalom Morgan ("Defendant Morgan"). Nathalie informed Defendant Morgan that she would like to purchase a house in California, that she had the funds to purchase a house in California, but that she would like to place the money into an interest-bearing bank account for the couple of weeks while she looked for and purchased a house.

Since she would be purchasing a house within a brief period of time, Nathalie told Defendant Morgan that she would need the money liquid and that she did not want to invest the money. Defendant Morgan began pressuring Nathalie to purchase auction rate securities. He represented to her that auction rate securities are not investments, that they are a safe way to hold money, and that they are perfectly liquid and had no risk.

Through these, and other, representations, on January 17, 2007, Defendant Morgan persuaded Nathalie to purchase 70 shares of the Neuberger Berman Realty auction rate securities. *See* Transaction Confirmation, attached as Exhibit 1 to the Declaration of

Al-Thani v. Wells Fargo & Company et. al.
MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

Meuser. After transferring the funds to Defendants Morgan, Andrey Movsesyan, Wells Fargo & Company, and Wells Fargo Investments, LLC (collectively "the Defendants"), Nathalie left the bank. When she left, Nathalie only had a copy of the Transaction Confirmation. Absent, and of great importance to this case, was the Wells Fargo Investments' Account Agreement.

Defendants knew that Nathalie had no other documents pertaining to the auction rate securities. This is evidenced by the Defendants' call to Nathalie on January 23, 2008 demanding that she come and sign a document necessary for her account. This call occurred several days after the Defendants purchased the auction rate securities in Nathalie's name. When she arrived to sign the document, Defendant Morgan only allowed Nathalie to see the signature page, they did not show her the entire 12 page document. Nathalie signed, believing Morgan's misrepresentation that her signature was necessary for her auction account. Defendants never provided Nathalie with a copy of the document, which Defendants now put forth as the Acknowledgement to the Account Agreement.[1]

Nathalie would also like to draw to the court's attention the fact that Defendants, as demonstrated in their "Exhibit A," only faxed one page (page 21 of the Exhibit) to whomever received the fax on January 23, 2008. Pages 9 through 20 of Document 18-2 filed with this court on June 6, 2006 do not contain any information that these pages were ever faxed.

---

[1] Within this Account Agreement is the Arbitration Clause upon which Defendants rely in bringing their Motion, a document Al-Thani did not receive until after she filed this action.

Al-Thani v. Wells Fargo & Company et. al.
MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

1   Throughout February of 2007, Nathalie demanded that the Defendants liquidate her

2   account so that she could purchase a house. Defendants repeatedly refused to do so and

3   often made excuses as to why they could not give her money to her.

4

5

6                          **SUMMARY OF LEGAL ARGUMENT**

7        [W]ritten provision in a contract to submit to arbitration a dispute arising
         out of the contract is valid, irrevocable and enforceable except on 'such
8        grounds as exist at law or in equity for the revocation of any contract.' (9
         U.S.C. § 2; Code Civ. Proc., § 1281)... [T]he existence of a valid
9        agreement to arbitrate is determined by reference to state law principles
         regarding the formation, revocation and enforceability of contracts
10       generally.

11  *Kinney v. United Healthcare, Inc.*, 70 Cal.App.4th 1322, 1327-1328 (Cal.App.4.Dist.

12  1999).

13
    To determine whether a contract, or a clause within a contract, is unconscionable, the
14
    court must look to the contract, to the relative bargaining position of both parties, and to
15
    the events that occurred at execution of the contract. "Under California law, '[t]he critical
16
    juncture for determining whether a contract is unconscionable is the moment when it is
17
    entered into by both parties." *Stern v. Cingular Wireless*, 453 F.Supp.2d 1143, 1144
18
    (C.D.Cal., 2006). Nathalie demonstrates herein, through the exhibits attached hereto, and
19
    at the hearing for this motion, that she and the Defendants entered into a contract not
20
    when she signed a piece of paper, but when the Defendants used her money to purchase
21
    Auction Rate Securities (six days before Defendants induced her into signing the
22
    Acknowledgement). Defendants presented Plaintiff with the last page of the 12 page
23
24  Account Agreement, mischaracterized the document and told her that she had to sign it.

25  //

26

27

28

Al-Thani v. Wells Fargo & Company et. al.
MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

**LEGAL ARGUMENT**

**I.**

**The Court Should Refuse to Honor an Unconscionable Contract and the Arbitration Clause Contained Therein.**

It is a well-settled principle of law that an analysis into the unconscionability of a contract must occur according to state law. "To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.' *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).

Unconscionability is a legal doctrine having applicability where the parties to a contract are of unequal bargaining position. That is to say, one must be on the lookout for potential unconscionability where one party to a contract occupies a greater bargaining position than the other party. *See Williams v. Walker-Thomas Furniture Company*, 350 F.2d 445 (D.C. Cir. 1965). And while the courts are uncertain as to the precise definition of unconscionability, it is uniformly accepted that unconscionability has two essential elements: (1) Procedural Unconscionability; and (2) Substantive Unconscionability. *See, e.g.*, *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 114-127 (Cal. 2000).

Just as the operative definition of unconscionability is broad, so also this Court has broad discretion when determining that the underlying facts render the Arbitration Clause unconscionable. The following citation, while of a decent length, provides excellent insight into the discretion of the court along with the elements at which the court ought to look:

> Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive

terms themselves.' In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa… A contract is oppressive if an inequality of bargaining power between the parties precludes the weaker party from enjoying a meaningful opportunity to negotiate and choose the terms of the contract. *Stirlen v. Supercuts, Inc.,* 51 Cal.App.4th 1519, 1532, 60 Cal.Rptr.2d 138, 145 (1997). 'Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms.'"

*Ingle* at 1170-1171

As delineated in this quote, and in what has become a reoccurring theme, procedural unconscionability has two elements: (1) Oppression; and (2) Surprise. Each will be examined herein, and Nathalie will demonstrate how the Defendants' actions fulfill the requirements for both oppression and surprise.

### A. Procedural Unconscionability

#### 1.Oppression

*By Purchasing the Auction Rate Security Before Nathalie Had an Opportunity to Review any Proposed Contract, Defendants Robbed Nathalie of a Meaningful Opportunity to Negotiate* or *Reject the Terms of Any Potential Agreement*

In a general sense, it is necessary to examine the manner in which the contract was negotiated in order to determine whether the contract, or a specific clause, is unconscionable. Contract negotiations must appear to occur within some ambit of integrity. "'Procedural unconscionability' concerns the manner in which the contract was negotiated and the circumstances of the parties at that time." *Kinney v. United Healthcare Inc.*, 70 Cal.App.4th 1322, 1329 (1999).

As explained in a different manner,

Did each party to the contract…have a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print and minimized by deceptive sales practices? Ordinarily, one who signs an agreement without full knowledge of its

9

1
2
3

> terms might be held to assume the risk that he has entered a one-sided
> bargain. But when a party of little bargaining power, and hence little real
> choice, signs a commercially unreasonable contract with little or no
> knowledge of its terms, it is hardly likely that his consent, or even an
> objective manifestation of his consent, was ever given to all the terms.

4

*Williams* at 449

5

The relationship between Nathalie and the Defendants was based upon the Defendants'

6

deceit, trickery, and fraud. Nathalie had a specific purpose in mind when she entered

7
8

Wells Fargo on January 17. She wanted her money placed in an interest bearing account

9

and in an account that would be completely liquid. She reiterated this desire to the teller,

10

and reiterated it to Defendant Morgan. When reiterating her desires to Defendant

11

Morgan, it would have been evident to the Defendants that Nathalie did not speak

12

English as her native language. It is very likely that Defendant Morgan determined to do

13
14

whatever was necessary to close the deal and sell Nathalie an investment that was

15

contrary to her needs and wishes when he saw the size of her deposit and when he

16

observed her limited understanding of English: breaching his fiduciary duties, Defendant

17

Morgan represented to Nathalie that auction rate securities are liquid and without risk.

18

Based on these representations, Nathalie entrusted Defendants with her money.

19
20

When Nathalie walked out of Wells Fargo on January 17, 2008, Defendants did not

21

provide her with an Account Agreement. They only provided her with a Transaction

22

Confirmation. According to the Transaction Confirmation, on either January 17th or 18th,

23

Defendants purchased 70 shares of The Neurberger Berman Realty auction rate

24

securities.

25

Defendants, on the other hand, posit that they provided Nathalie with a copy of the

26

Account Agreement. They did not. Assuming *arguendo*, though, Defendants provided

27

Nathalie a copy of the Account Agreement, they did not allow Nathalie with enough time

28

Al-Thani v. Wells Fargo & Company et. al.
MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

to review the Agreement before purchasing the auction rate securities. Again, Defendants purchased the auction rate securities either on January 17th or 18th, 2008. *See* Exhibit 1, attached to the declaration of Meuser.

> Circuit City argues that because Ingle had sufficient time-three days-to consider the terms of the arbitration agreement, the court should not find this agreement procedurally unconscionable. We disagree. The amount of time Ingle had to consider the contract is irrelevant. We follow the reasoning in *Szetela v. Discover Bank,* 97 Cal.App.4th 1094, 118 Cal.Rptr.2d 862 (2002), in which the California Court of Appeal held that the availability of other options does not bear on whether a contract is procedurally unconscionable. [Citations omitted]. Rather, when a party who enjoys greater bargaining power than another party presents the weaker party with a contract without a meaningful opportunity to negotiate, "oppression and, therefore, procedural unconscionability, are present."

*Ingle*, at 1172.

*Ingle* held that the time that a party has to review a contract is irrelevant. Defendants posit that California courts presume that parties read documents provided to them. To a degree, Nathalie concedes this argument. But she does so with this caveat: in all the cases cited by Defendants, the parties had the opportunity to read the proposed contract before assenting to the terms. In Nathalie's case, Defendants failed to provide Nathalie with a copy of the Account Agreement and, even if they did, Defendants failed to provide her a reasonable opportunity to review the proposed terms by purchasing the auction rate securities on January 17 or 18.

The relationship between Defendant Morgan and Nathalie was akin to that of Merchant and Consumer. Nathalie, as the consumer, with a great degree of specificity, told Morgan what she needed. Defendant Morgan, as the merchant, warranted to her that auction rate securities were an exact fit for her particular purpose. He did this despite knowing that auction rate securities are security transactions, an investment which includes greater risk

Al-Thani v. Wells Fargo & Company et. al.
MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

than a simple money market or certificate of deposit. A security transaction was exactly the opposite of what Nathalie needed and, in fact, was in direct contradistinction to her express limitations.

Only after Defendants purchased the auction rate securities did they attempt to enter into a contract with Nathalie. And they did so by representing to her that the document which she was signing was simply necessary for the auction, *an auction that had already occurred!* There was no substantive negotiation. Defendants did not even provide Nathalie an opportunity to read the Account Agreement.[2]

"'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.'" *A & M Produce Corporation v. FMC Corporation*, 135 Cal.App.3d 473, 486 (Cal.App.4.Dist. 1982). The Defendants wish to posit that Nathalie assented to the terms of the Account Agreement. Yet, they purchased the auction rate securities before she signed any piece of paper. By investing the money before securing Nathalie's signature, the Defendants created an inequality of bargaining power of monolithic proportions. Whether or not the Defendants agree, the temperament of any average, reasonable person in Nathalie's shoes toward the Defendants would be that of fear—a belief that the Defendants would say, "We have your money; Sign or else." At least six days later, on January 23, Defendants demanded that Nathalie sign a paper they claimed was necessary for the account.

This case is similar to *Kinney v. United Healthcare*. In *Kinney*, defendant's employees were required to sign a form acknowledging the receipt of the Employee Handbook. The

---

[2] Defendants posit that they provided Nathalie a copy of the agreement when she left their offices on January 17. This simply is not true. The first time Nathalie saw a copy of the Account Agreement was when it was forwarded to her attorneys on April 30, 2008 by defendant's counsel. *See* Al-Thani Declaration.

Al-Thani v. Wells Fargo & Company et. al.
MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

Handbook contained an arbitration provision. The acknowledgement the employees were forced to sign included a "promise" to adhere to the terms of the Handbook and a specific "confirmation" of the arbitration provision. The Defendant provided its employees no opportunity to object or to proffer terms different to the Handbook or Acknowledgement. Plaintiff filed her suit, and Defendant moved to compel arbitration. The motion was denied.

The court found that the arbitration was so one-sided that it "fail[ed] to satisfy even a "modicum of bilaterality," being so one-sided and unfair to United's employees that its terms are unenforceable." *Kinney* at 1332. In other words, the Plaintiff had no opportunity to make a counter offer or to engage in any form of contractual negotiations. This one-sidedness was procedurally unconscionable. Likewise, Defendants in the instant case wish to rely on an Acknowledgement referencing an Account Agreement, in which an arbitration provision appears. Defendants did not provide Nathalie with an opportunity to read either the Acknowledgement or the Account Agreement. In fact, the Defendants lied about the Acknowledgement, telling Nathalie that it was a document necessary for the auction rate securities —the auction rate securities that Defendants had already consummated. At least the Plaintiff in the *Kinney* case had the opportunity to read her handbook.

### 2. Surprise
*Nathalie is Surprised that a Document Necessary for the Auction is Now Being Proffered by the Defendants as the Acknowledgement to the Account Agreement*

Surprise, as an element of unconscionability, refers to the defendants' hiding terms within a contract. "The second component of procedural unconscionability encompasses an

Al-Thani v. Wells Fargo & Company et. al.
MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

aspect of surprise, with the terms to which the party supposedly agreed being hidden in a prolix printed form drafted by the party seeking to enforce them." *Kinney* at 1329.

When Defendants demanded that Nathalie sign the Acknowledgement, they induced her signature by representing that the document was necessary for the auction. At the time they induced her signature, they would also have known Nathalie's limited understanding of the English language and an even more limited understanding of formal, written English. This allegation is much more than a failure to disclose certain terms appearing on a document, as Defendants suggest in their Motion (*see* Motion at pp. 8-10). This is an allegation of fraud and *intentional misrepresentation*, taking advantage of a foreigner wanting to live in this country.

The terms to which Defendants now point are a surprise to Nathalie. They were "hidden" within the form Acknowledgement, upon which Defendants induced her signature. Even more so, she is surprised that Defendants proffer the document as an Acknowledgement, when she was not even provided the opportunity to read the document or the Account Agreement.


B. Substantive Unconscionability
The Terms of the Agreement Are Substantively Unconscionable Where Defendants Are Attempting to Hide Their Misconduct under the Venerations of a Purportedly Valid Acknowledgment

Having demonstrated that the Acknowledgement is procedurally unconscionable, Nathalie now turns her attention to substantive unconscionability. In a nutshell, "Substantive unconscionability focuses on the actual terms of the agreement, while procedural unconscionability focuses on the manner in which the contract was negotiated

and the circumstances of the parties." *American Software Inc. v. Ali*, 46 Cal.App.4th 1386, 1391 (Cal.App.1.Dist. 1996).

The standard for substantive unconsionability is within the discretion of the court and is often defined as terms which are "so one-sided as to '*shock the conscience*.'" *Kinney* at 1330 (emphasis not added). As with procedural unconscionability, substantive unconscionability must also look to the circumstances surrounding the execution of the agreement in question. For these purposes, we really have two dates where we must examine the surrounding circumstances. The first was January 17, 2007. On this day, the Nathalie contends that the Defendants employed fraud, misrepresentation, and deceit to obtain her money and permission to purchase auction rate securities. Sometime after she left the Defendants on January 17, and before January 23, Defendants purchased (or caused to be purchased) 70 shares of the Neurberger Berman Realty auction rate securities. When Nathalie left the Defendants' location on January 17, Defendants failed to provide Nathalie with an Account Agreement—the Agreement referenced by the Acknowledgement.

At the time, Defendants engaged in their injurious actions (inducing Nathalie to deposit her money with them and purchasing the auction rate securities), Account Agreement did not govern. It could not have governed, because it had not yet been given to Nathalie so thus there was no intent of the parties to be bound by a document that did not been received or reviewed. Even if Defendants provided Nathalie with an Account Agreement for her perusal, they did not provide her sufficient time to review the Agreement before purchasing the auction rate securities. Thus, at the time that Nathalie agreed to deposit

Al-Thani v. Wells Fargo & Company et. al.
MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

her money, she had not agreed to any Arbitration Clause. Defendants, shortly after Nathalie deposited the money, purchased the auction rate securities.

On or about January 23, 2008, Defendants <u>called Nathalie back to the bank and demanded that she sign a one page paper that Defendants misrepresented</u> to her as necessary for the auction. At <u>no</u> time did the Defendants tell her what she was signing nor did they show her or give her the other 11 pages to the document she signed. Defendants knew full well that she spoke a limited amount of English! Defendants now claim that this paper is the Acknowledgement. They further claim that the entire Account Agreement is valid because Nathalie signed this "Acknowledgement." Such a claim— and demand that she submit to terms imposed upon her after the Defendants caused her financial injuries—renders the entire Account Agreement, including the arbitration clause, unilateral. Defendants' demand that this Court enforce the arbitration clause should be onerous in the eyes of justice. Mutuality of agreement disappeared long before Defendants demanded that Nathalie execute the one-page paper now known as the Acknowledgement. It is clear from their actions that Defendants realized the potential repercussions of their actions and sought to protect themselves in arbitration by presenting the guise that Nathalie signed the Acknowledgement. It shocks the conscience that, once realizing their actions, Defendants attempted to hide behind the venerations of contractual "protections." To now argue that the Account Agreement and the concomitant Arbitration Clause are valid certainly renders the arbitration clause "overly harsh [and] one-sided, with no justification for it at the time of the agreement." *American Software* at 1393.

//

Al-Thani v. Wells Fargo & Company et. al.
MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

**II.**

**Defendants' Principal Authority Agrees with Nathalie's Position and Her Arguments Against Compelling Arbitration**

To establish that this Court must grant their motion to compel arbitration, Defendants rely principally on *Stern v. Cingular Wireless Corporation*, 453 F. Supp.2d 1138 (C.D. Cal. 2006). Nathalie could not agree more with the citation of this case. The facts between her case and *Stern* are very similar and the court in *Stern* reached the conclusion sought by Nathalie.

In *Stern*, Defendant Cingular Wireless sought to compel arbitration on the basis of a Service Agreement with the Plaintiffs. After Plaintiffs signed the Service Agreement, Cingular Wireless provided the Plaintiffs with a separate booklet entitled "Important Information and Service Agreement." In this booklet was, for lack of a better descriptive term, an "arbitration clause." Similarly, Nathalie signed the Acknowledgement[3] and, only after signing, received the "Brokerage Account Agreement."

The *Stern* Court denied Cingular's motion to compel arbitration, ruling that the arbitration clause was both procedurally and substantively unconscionable. Pertaining to procedural unconscionability, the court found that plaintiff's "first opportunity to 'negotiate' the arbitration clause likewise came after purchase. That negotiation could take but one form: cancel her service. The Court concludes that the circumstances in which the arbitration clause was presented to plaintiff indicate a substantial degree of procedurally unconscionable surprise." *Stern* at 1147. Similarly, Nathalie's first opportunity to "negotiate" the arbitration clause in the Account Agreement comes after

---

[3] Again, Nathalie signed the Acknowledgement when Defendants demanded her signature. Defendants did not provide her a reasonable opportunity to read the Acknowledgement, which undoubtedly would have raised important questions concerning Defendants' representations.

Defendants purchased the auction rate security and occurs within the auspices of this courtroom.

The court also found that the arbitration clause in the *Stern* agreement was substantively unconscionable as it clearly lacked a modicum of "bilaterality." Stern at 1148. Similarly, the Defendant's remedy is one-sided—it operates only to the Defendant's advantage. "Although parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope ... the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party." *Stern* at 1149. There was no bargaining here. Nathalie's "remedy" was to accept the Defendant's Acknowledgement, or lose her money.

## CONCLUSION

Mrs. Al-Thani respectfully requests this court to deny Defendant's Motion to Compel Arbitration.

Respectfully submitted this 6th day of August 2008.

HASSAN LAW FIRM

by:  _/s/  Mark P. Meuser_____
       Rey Hassan SBN #50717
       Mark P. Meuser SBN #231335
       1801 Bush Street, Suite 304
       San Francisco, CA 94109
       (415) 775-9700 – Telephone
       (415) 775-2507 – Facsimile
       reylaw@earthlink.net
       mpm@markmeuser.com
ATTORNEYS FOR PLAINTIFF

Al-Thani v. Wells Fargo & Company et. al.
MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

REY HASSAN, SBN 50717
MARK P. MEUSER, SBN 231335
HASSAN LAW FIRM
1801 Bush Street, #304
San Francisco, CA 94109
Telephone: (415) 775-9700
Fax: ( 415) 775-2507
E-Mail: reyhassan@yahoo.com

Attorney for Nathalie Al-Thani, Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| NATHALIE AL-THANI,<br><br>            Plaintiff,<br><br>        Vs.<br><br>WELLS FARGO & COMPANY,  WELLS FARGO INVESTMENTS, LLC, SHALOM MORGAN, DAN HILKEN, ANDREY MOVSESYAN, and DOES 1 to 100 inclusive<br><br>            Defendants. | Case No.: CV 08-1745 CW<br><br>DECLARATION OF MARK P. MEUSER |

I, Mark P. Meuser, declare:

1.  I am an attorney for plaintiffs in this action, and I have personal knowledge of each fact stated in this declaration.

2.  Attached as Exhibit 1 is a Transaction Confirmation that was given to Nathalie Al-Thani by the defendants.

Dated this 6th day of August, 2008.              /s/ Mark P. Meuser              .
                                                 Mark P. Meuser

Al-Thani v. Wells Fargo & Company et. al.
Declaration of Meuser

Exhibit 1

Return Mail Processing Only
Not For Client Correspondence
PO Box 5275
Sioux Falls, SD 57117-5275

**WELLS FARGO INVESTMENTS**

| **You Bought** | | **Price** | **Account Type** | **Trade Date** | **Settlement Date** | **CUSIP** | **Mkt/ Cap** |
|---|---|---|---|---|---|---|---|
| 30 | | 25,000.00 | CASH | 01/17/08 | 01/18/08 | 64126G406 | 01 |

**Security Description:**
NEUBERGER BERMAN REALTY
INCOME FUND INCOME PFD
SER C AUCTION RATE

**Additional Remarks:**
INCOME PMT FREQ WEEKLY
SOLICITED

| Principal Amount | $750,000.00 |
|---|---|
| Net Amount | $750,000.00 |

**Ratings:**
MOODYS: AAA

**Account Number: 45091942**

THIS TRANSACTION ( # OO4330676 ) IS CONFIRMED IN ACCORDANCE WITH THE EXPLANATIONS AND CONDITIONS STATED ON THE REVERSE SIDE .

Financial Consultant:   EBTD
MORGAN/MOVSESYAN
420 MONTGOMERY ST, 7TH FLOOR
SAN FRANCISCO CA 94104
Telephone: 415-409-1496



388406  F001  1361  1OZ  1/1 ------  1361
NATHALIE AL-THANI
1000 CHESTNUT ST APT 12A
SAN FRANCISCO    CA   94109

**PRIVATE | CLIENT | SERVICES**

Wells Fargo Investments, LLC (Member SIPC),
a non-bank affiliate of Wells Fargo & Company.

**Investment and Insurance Products:**
- Are **NOT** insured by the FDIC or any other federal government agency
- Are **NOT** deposits of or guaranteed by the Bank or any Bank Affiliate
- May Lose Value

---

Return Mail Processing Only
Not For Client Correspondence
PO Box 5275
Sioux Falls, SD 57117-5275

**WELLS FARGO INVESTMENTS**

**TRANSACTION CONFIRMATION**

| **You Bought** | | **Price** | **Account Type** | **Trade Date** | **Settlement Date** | **CUSIP** | **Mkt/ Cap** |
|---|---|---|---|---|---|---|---|
| 40 | | 25,000.00 | CASH | 01/17/08 | 01/18/08 | 64126G406 | 01 |

**Security Description:**
NEUBERGER BERMAN REALTY
INCOME FUND INCOME PFD
SER C AUCTION RATE

**Additional Remarks:**
INCOME PMT FREQ WEEKLY
SOLICITED

| Principal Amount | $1,000,000.00 |
|---|---|
| Net Amount | $1,000,000.00 |

**Ratings:**
MOODYS: AAA

**Account Number: 45091942**

THIS TRANSACTION ( # OO4330933 ) IS CONFIRMED IN ACCORDANCE WITH THE EXPLANATIONS AND CONDITIONS STATED ON THE REVERSE SIDE .

NATHALIE AL-THANI
1000 CHESTNUT ST APT 12A
SAN FRANCISCO    CA   94109

Financial Consultant:   EBTD
MORGAN/MOVSESYAN
420 MONTGOMERY ST, 7TH FLOOR
SAN FRANCISCO CA 94104
Telephone: 415-409-1496

**Investment and Insurance Products:**
- Are **NOT** insured by the FDIC or any other federal government agency
- Are **NOT** deposits of or guaranteed by the Bank or any Bank Affiliate
- May Lose Value

**PRIVATE | CLIENT | SERVICES**